DETERMINED IN THE

# Supreme Court of Judicature,

OF THE

## STATE OF NEW JERSEY,

AT FEBRUARY TERM, 1825.

---

### HAND *v.* HOFFMAN.

Parol evidence cannot be admitted to abridge the natural import of the terms made use of by devisor in a will.

Parol evidence shall not be admitted to explain a devise, when the will can have an effectual operation without such evidence.

---

The facts of this case are sufficiently developed, and will be fully understood by the opinions delivered.

*L. Q. C. Elmer* for plaintiff.

*D. Elmer* for defendant.

EWING, C. J.—Upon the trial of this cause which is an action of trespass *quare clausum fregit*, the defendant, having pleaded *liberum tenementum*, made title to the *locus in quo* under Jonas Hoffman, deceased, who was

admitted to have been seized thereof at the time of making his will and at his decease. He gave in evidence the will of the said Jonas, bearing date the 9th September, 1809, in which he devised to his son Eli, as whose servant the defendant committed the alleged trespass, in these words, " Also I give him, my son Eli, all that part of cedar swamp to the eastward of the aforesaid run and branch, below said saw-mill, all which privileges and premises I give to my son Eli, his heirs and assigns forever."

It was then shewn to the jury by the defendant, that the *locus in quo* was cedar swamp, and situate on the east side of the branch mentioned in the said will, and below the saw-mill therein also mentioned.

The plaintiff then gave in evidence a survey to Henry Stiles of a tract of fifty acres, including the *locus in quo,* and a map of said survey.

The plaintiff then offered to prove " that Jonas Hoffman at the time of his death was possessed of and owned several tracts of land lying contiguous or in the same neighborhood, held under different surveys or other titles ; that the *locus in quo* is part of a certain 50 acre tract called the Henry Stiles' survey, and that the said survey was originally a swamp survey, and includes the mill-pond and stream, and a few acres of upland some on both sides of the stream ; that this tract was in the lifetime of the said Jonas Hoffman always called the grist-mill tract, and so called by his family after his death ; that the saw-mill tract of 10 acres lies some distance above the 50 acre tract; that the 22 acre tract of cedar swamp mentioned in the will lies immediately above and adjoining the 50 acre tract, partly on the east and partly on the west side of the branch ; that between the saw-mill and the 22 acre tract, there is a tract extending across the swamp which was never owned or claimed by Jonas Hoffman, and that said Jonas at the time of his death owned cedar swamp below the saw-mill on the east side of the stream, above the tract not owned by him, as well as below that tract."

The evidence thus offered on the part of the plaintiff was overruled by the Judge before whom the cause was tried, and a verdict having been given for the defendant, the propriety of his determination is the question presented for our consideration.

The case depends on the inquiry whether there exists here what is technically called a latent ambiguity, for it is clear and indeed was not controverted at the bar, that without, such ambiguity, the construction of the will must be drawn from the words, and parol evidence cannot be admitted to supply, contradict, enlarge or vary the words, nor to explain the intention of the testator.

A latent ambiguity is where the words of a written instrument are plain and intelligible, but by reason of extraneous facts, the certain and definite application of those words is found impracticable. In such case, to preserve the instrument, to give it operation and effect, to prevent it from being defeated by uncertainty, parol evidence to explain its intent and to fix its application is admissible. Where a devise is to a particular person by name, and there are two or more of that name, *Cheyney's* case, 5 *Coke.* 68, *Jones* v. *Newman*, 1 *W. Black.* 60; where a bequest is made to a person by name and there is no person of that name, *Beaumont* v. *Fell*, 2 *P. Wms.* 140, *Hodgson* v. *Hitch, Prec. Ch.* 229; where a bequest is to a person by description and there are more persons than one answering that description, *Harris* v. *Bishop of Lincoln*, 2 *Peere Wms.* 136; where a testator gives a particular chattel and he has two or more of the same description, 1 *John. Ch. Rep.* 234; where a man levies a fine of the manor of Dale and he has two manors of Dale, *Plowden*, 85; where one grants the manor of S. and it is proved that he has a manor of North S. and a manor of South S. 1 *Phillips on evidence*, 467; where the testator gave a sum, part of his four per cent bank annuities, and had no such stock, but stock of a different kind called long annuities, *Selwood* v. *Mildmay*, 3 *Vezey*, 306; in these and

such cases, the facts dehors the will render uncertain the application of the words in themselves plain, and without explanation from parol evidence, which from the necessity of the case is therefore admitted, the devise or bequest must be void and inoperative.

In the case before us, it is manifest that no such uncertainty of application, no such necessity of additional evidence to fix and ascertain the operation of the will is produced by the facts in evidence or would be by those proposed to be proved. The testator owned cedar swamp on both sides of a certain run or branch, on which stood a saw mill belonging to him. He devises to his son all that part of cedar swamp to the eastward of said branch and below his saw mill. Whatever is fairly contained within that description passes to the devisee. The cedar swamp in question is situated on the east side of that branch and below the saw mill. There is then no uncertainty in the application of the devise. There is no other subject, to one or the other of which it exclusively belongs, and to which of them thereby becomes a matter of doubt. Nothing in the mode of expression necessarily confines it to one lot of cedar swamp. On the contrary the words naturally and fairly extend to whatever cedar swamp he held eastward of the branch and below the mill; and that this construction is just and accordant with the views of the testator is evinced by a reference to another clause in which intending to give part of a particular tract he describes it specifically by the terms "the twenty-two acres tract of cedar swamp." From the fact then that the testator owned other lots of land, or of cedar swamp, and either adjoining to or separate from each other, on the east side of the branch and below the saw mill, no uncertainty results, for to all such cedar swamp the terms of the will have a clear and definite application; nor would any uncertainty be induced by the fact proposed to be shewn that the *locus in quo* is included in a tract which in the lifetime of the testator and by his family after his decease was called

the grist mill tract, for in perfect consistency therewith, part of that very tract may be plainly devised by the description of cedar swamp lying eastward of the branch and below the saw mill. And in this proposition there is nothing which militates against any expression or clause of the will, for it is observable, although that tract may have been familiarly called the grist mill tract, no such name is used by the testator in his will. He gives two-thirds of his grist mill, with two thirds of the privileges of the mill pond, stream, &c. to his son William; and the other third part of his grist mill, with one third part of the privileges of the mill pond, stream, &c. to his grandson James; expressions which by no means exclude, but are perfectly consistent with, a devise of part of the tract called the grist mill tract, which was cedar swamp, to Eli.

In the doctrine of the admissibility of parol evidence it is a rule that it shall never be admitted where the will can have an effective operation without it; and such evidence shall be admitted only where the will could otherwise have no operation. The cases heretofore cited are all within that rule. In *Doe* v. *Oxenden*, 3 *Taunton*, 147, Ch. Justice *Mansfield* says—" In the case now before the court the will has an effective operation without the evidence proposed; every thing will pass under it that is in the manor or parish, or what he would naturally call his Ashton estate. This will be an effective operation, and this being so, the case in this respect differs from all the others, because in them the evidence was admitted to explain that which without such explanation could have no operation. It is safer not to go beyond this line." And in the same case when before the House of Lords, *Gibbs*, Ch. Justice, in delivering the unanimous opinion of the Judges, 4 *Dow*, 63, says: — "The admission of evidence to explain the ambiguity is necessary to give effect to the will, and it is only in such a case that extrinsic evidence will be admitted."

The application of this rule to the case before us will

exclude the parol evidence which was offered. Without it, the will has effective operation. If such evidence and the explanation intended to be deduced from it were wanting, the devise would not cease to have effect. Without it, the devise has a definite and certain application. No ambiguity exists, the explanation and removal of which are necessary in order to give effect to the will.

The case of *Doe* v. *Oxenden* may afford some farther illustration of this subject. The testator devised in these words, " I give my estate of Ashton in the county of Devon." He had a paternal estate called the Youlston estate, and a maternal estate which consisted chiefly of lands lying in the parish of Ashton and partly of lands lying in adjacent parishes. To shew that by the words " my estate of Ashton " the devisor intended to dispose of the whole of the maternal estate, proof was offered of expressions used by the testator at various times in describing his property; that his paternal property he used to call his Youlston estate, and the estate derived from his mother he used to call his Ashton estate; and also proof of various written annual accounts of his stewards, marked accounts for Ashton estate, and containing charges of rents of other lands besides those in the parish of Ashton. But the Court of Common Pleas held such proof inadmissible. The Chief Justice says, " In this case my own judgment only, is if the evidence were admitted that the testator meant to devise the whole of his maternal estate to his maternal relations, and not only the land situated at Ashton. But to decide in favor of this evidence would be going farther than any court has yet gone."

In the case of *Doe* v. *Lyfford and another*, 4 *Maule* and *Selwyn*, 550, Tyrell was seized of lands in the hamlet of Suttonwick in the parish of Sutton Courtney, and of other lands out of Suttonwick but in the parish of Sutton Courtney which he purchased of one Lovibond:—and devised " all that his messuage or tenement, farm, land and premises situate, lying and being at Suttonwick in the parish of

Sutton Courtney which he lately purchased of and from Lovibond." One Wise had held the whole as tenant under Tyrell in his lifetime, at a yearly rent, and had yielded up the same under a notice to quit from Tyrell, in which they were described as "all that messuage or tenement, orchard, garden, barns, stables, pigeon-house, arable land, meadow grounds, commons, and all the other premises with their and every of their appurtenances which you now rent of me, situate and being at Suttonwick in the parish of Sutton Courtney." The devisee claimed the lands out of Suttonwick as well as within it, and offered in evidence the notice in order to shew that the testator treated the whole estate as lying in Suttonwick, and to explain the devise. His counsel argued that it was reasonable to suppose that the testator did not intend to separate them but to devise generally all the estate which he purchased of Lovibond, though he described it as at Suttonwick that being the place where the capital messuage was situate. But the court held the evidence inadmissible. *Lord Ellenborough* said, "here the will is fully operative to pass the lands at Suttonwick, and there is nothing in the description of them from which any ambiguity is raised as to the property, for if you look to the words 'which he purchased of Lovibond' the devisor had lands answering that description ; and also the other description if you look to the words 'situate at Suttonwick.' So that there is not any occasion to refer to extrinsic evidence in order to give this will effect." *Le Blanc, Just.* said, "It may very possibly be that this testator intended to give something different from what the court is bound to say he meant upon the construction of this will. But it is better that known established rules should be abided by than that we should admit parol evidence where it is not within the range of adjudged cases, and thereby incur the hazard of overturning ancient landmarks," and he declares the established rule to be "that where the will is satisfied without it, the court will not go into extrinsic evidence in order to raise

difficulties as to the intention, but will construe it so as to give effect to every word of the devise." *Bayley, Just.* says,—" In devises, the rule of construction is to make use of all the words and not of part; and therefore where a testator dies seized of property which exactly corresponds with every part of the description given in the devise, we are not at liberty to resort to extrinsic evidence in order to shew that he intended to pass other property which answers that description only in part. In this case the testator had property to satisfy the entire description in the will and therefore we cannot reject a part of it."

The principle decided in these cases has a direct application to the present. This difference, in point of fact, exists, that the testimony offered in these cases was to enlarge and extend the meaning of the respective devises—to extend the devise beyond what, to use the language of the Chief Justice in the former case, the testator would "naturally call his Ashton estate;" and the testimony offered in the present case, was by shewing that the testator called the premises in question his grist mill tract, thereby to abridge the natural import of the term cedar swamp; and to establish that when the testator gave the cedar swamp to the eastward of the branch and below the mill, he meant only part of such swamp; but this difference does not lessen the weight of the cases, for the principle which forbids the introduction of parol to vary written evidence, equally prohibits that which would abridge as that which would enlarge the extent of the words.

It was stated at the bar by the counsel of the plaintiff that it is surely competent to prove the situation of a testator's property in order to shew where the devise may apply. It is so. The evidence under consideration, however, was not to establish localities but for the avowed purpose of explaining the devise in the will.

On the whole, the end, operation and effect of the proposed evidence was, not to remove a latent ambiguity, but

to vary, limit and control the plain words of a will where no such ambiguity existed, and was therefore properly rejected.

Let the rule to shew cause be discharged, and judgment for the defendant be entered.

FORD, J.—This was an action of trespass for cutting trees in a cedar swamp, late the property of Jonas Hoffman, deceased; it was situated on the *easterly* side of a run or branch of water, and below the said Jonas Hoffman's *saw* mill.· The defendant pleaded title in Eli the son of Jonas Hoffman, deceased, and in support of it gave in evidence a devise to Eli in the last will and testament of his father Jonas, in these words—"·I give my son Eli all that part of cedar swamp to the *eastward* of the aforesaid run and branch *below* said saw-mill."

The plaintiff replied, that this devise contained a *latent ambiguity,* which rendered it insensible and void; and offered to prove that the testator had *three* cedar swamps on the east side of the branch below the mill, which he not only held under three distinct purchases, but that *one* of these swamps was detached from the other two, by an intervening tract that belonged to a stranger; and as there was no possibility of ascertaining what part the testator intended, the devise was void for uncertainty. The judge perceiving, however, no ambiguity, refused the evidence; and charged the jury that it was a plain devise to Eli of "*all* the testators' cedar swamp on the *easterly* side of the branch *below* the mill." The jury found accordingly; and the plaintiff moves for a new trial on the ground of *competent* evidence having been overruled at the trial, and on the further ground of a *misdirection* to the jury.

*First,* as to the admissibility of the offered evidence. The general rule is that parol evidence shall never be received to explain away a written instrument, whether it be a deed or will. The power of devising by last will and

testament would be deeply impaired by accepting any other evidence of the testator's intention than what is to be gathered from the will itself. To this rule there is however an exception in favor of receiving parol evidence to *shew a latent ambiguity.* It is the nature of a latent ambiguity never to appear on the face of the will; but to lie hidden in the *person,* or *thing,* or *subject,* whereof the will speaks. As when a testator devised lands in fee simple to his *son,* nothing ambiguous appeared on the face of the will; but parol evidence was received to shew that the testator left *two sons.* Now parol evidence, or evidence *dehors* is never admitted unless it *shews* a latent ambiguity or goes to *remove* one. But this evidence did not go to *shew* one. The parol evidence was manifestly useless if the devise gave the whole on the east side, because the whole must comprehend all the parts; or if it be admitted for argument sake that *only a part* was given on that side, that part was manifestly *indefinite and void,* without any aid from extrinsic evidence; an indefinite part of *one* swamp being as void as an indefinite part of three. From hence it follows, that the ambiguity (if one there be) is not in the *subject,* nor of the latent kind; but is to be found in the words and phraseology of the will, which is an *ambiguitas patens,* appearing on the face of the written instrument; and to receive evidence of the testator's intention from proof *dehors,* extrinsic or parol, would render all wills hollow, and lead to the *making* of wills in court, and not to the legal construction of them. The *ambiguitas patens* raises no question for a jury and witnesses, but one of pure legal construction for the court.

*Secondly*—Let us then examine the words of the devise and see if they can be plausibly perverted. It gives "all that *part* of cedar swamp east of the run below the mill." It is argued that the word "*part*" necessarily imports *less* than the whole. This may be safely admitted, for the words shew that the testator did not mean by this devise to give

Eli all the cedar swamp that he owned; it clearly imports that he had cedar swamp *above* the mill, and Eli is to have *below* it; it imports that he had cedar swamp on the *west* side of the run, and Eli is to be confined to the *east* side. Therefore all that part below the mill on the east side of the run is perfectly intelligible. The word *part* may mean section, share, division; now a *whole* section, a *whole* share, a *whole* division, are phrases too familiar in our language to be mistaken for *solescisms.* What places the matter beyond dispute is, that the word *all* is added to the word *part* in this very devise. It is *all that part* on the east side; and how "all that part" on the east side can be understood to mean only *a part of that part* on the east side, is hard to imagine.

It is admitted that the testator meant to give *some* on that side to Eli, and if the *residue* on that side is not devised to him it is given to nobody, and the testator must have died with regard to it, *intestate.* This furnishes a strong reason in favor of the foregoing construction. The court will give operation to every part of the will if possible, and set aside no part of it 'for being unintelligible but as a *dernier resort.* Wherever a construction can be reasonably given to *maintain* a devise it ought to be done rather than to declare it *void,* according to the maxim of law, "*ut res magis valeat quam pereat.*"

Let the postea be delivered to the defendant.

Rossell, J. concurred.

Rule to shew cause discharged.