174 N.J. Super. 52 (1980)
415 A.2d 371
COUNTY OF SOMERSET, PLAINTIFF,
v.
THEODORE W. DURLING, HARRIET E. DURLING, AND JOHN CATON, DEFENDANTS.
JOHN CATON, THIRD-PARTY PLAINTIFF,
v.
LILLIAN F. BELLOWS, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division  Somerset County.
Decided March 31, 1980.
Opinion Rendered May 7, 1980.
*54 Michael V. Camerino for plaintiff (Ozzard, Rizzolo, Klein, Mauro & Savo, attorneys).
Richard J. Murray for defendant.
Roger A. Beeman for third-party plaintiff (Roth, Beeman & Savage, attorneys).
G. Thomas Reynolds, Jr. for third-party defendant (Mason, Griffin & Pierson, attorneys).
DREIER, J.S.C.
This is a quiet title action by the County of Somerset. Third-party defendant Lillian F. Bellows (Bellows) has moved for summary judgment dismissing defendant third-party plaintiff John Caton's (Caton) claim against her for indemnity based upon an alleged breach of warranty or misrepresentation.[1] The question here discussed, of novel impression in New Jersey, is whether certain statements in an affidavit of title are legally sufficient to support liability of the seller-affiant Bellows, where one or more such statements are alleged to have been unintentionally inaccurate when made.
On December 5, 1973 Bellows delivered a deed to two lots in Hillsborough Township to Caton. Pursuant to the contract of sale the deed was in the form of a bargain and sale deed with covenants against grantor's acts, and was accompanied by an affidavit of title in the usual form, all prepared by the counsel for seller. See, e.g., 13A N.J. Practice (Lieberman, Abstract & Titles) (3 ed.), § 1698 at 185, and 14 N.J. Practice (Lodge, Legal Business Forms (2 ed.)), § 5 at 13. Subsequently Caton conveyed the lots by warranty deed to plaintiff Somerset County, *55 which brought this action to quiet its title against a claim by defendant Theodore W. Durling (Durling) of ownership in fee simple to part of one lot and an easement over the other. Plaintiff claims that if Durling is successful in his claims, Caton is liable for its loss. Since many of Durling's claims, if valid, would have been perfected prior to the conveyance by Bellows to Caton, Caton in turn asserts that if he is liable to plaintiff, Bellows is liable to him, not under any deed covenants[2], but for misrepresentations in her affidavit of title.[3]
The affidavit of title signed by Bellows has only four statements which are not qualified or modified by phrases such as "to her knowledge" or "she is informed and believes." Caton argues that these statements, being absolute, are essentially warranties, the breach of any of which is sufficient to support Bellows liability, even if such breach is innocent or unknowing. In the alternative, he urges that the inaccuracies present in the affidavit *56 are sufficient to show equitable fraud. See Foont-Freedenfeld Corp. v. Electro Protective Corp., 126 N.J. Super. 254 (App. Div. 1973), aff'd 64 N.J. 197 (1974). Caton's position is alleged to be bolstered by the affiant's statement that
... this affidavit is made to induce John Caton to accept a Deed or said premises and pay the consideration thereof, knowing that said person will rely upon the truth of the statements herein contained.
The four relevant unqualified statements or warranties are as follows:
Lillian Bellows being duly sworn say[s] ...
[1] that she is now in possession and the owner in fee simple of the [lots] . .
[2] that the said premises have been held by her for T.I. [Tract I]  30 years. T. II [Tract II]  2 years. last past, and that her possession thereof has been peaceable and undisturbed ...
[3] that no person has any ... claim to or against said premises ...
[4] and that the same are now free and clear of all taxes, incumbrances or liens by mortgage decree, judgment or by statute, or by virtue of any proceeding in any court ... and all other liens and claims of every nature or description.
Knowing misrepresentations in an affidavit of title clearly give the buyer who relies on their truthfulness a cause of action in fraud against the affiant-seller for resulting damages. See Pitale v. Leroy Holding Co., 65 N.J. Super. 361, 364 (Ch.Div. 1961). It is admitted, however, that when Bellows made the statements she had neither actual knowledge that they were inaccurate, nor even knowledge of any facts from which she should reasonably have ascertained such inaccuracy.
To support her summary judgment motion, Bellows argues that an affidavit of title has never been sufficient to support liability for any inaccuracies except knowing or fraudulent misstatements. Such statements, she claims are not warranties. She alleges that neither party intended otherwise, and further *57 asserts that Caton did not rely on the affidavit as providing any warranties as to the title of the property. Lastly, she also relies upon the alleged current practice of New Jersey attorneys to demand and receive such unqualified statements without rendering their clients liable for unknown inaccuracies.
This court cannot accept these arguments on a motion for summary judgment. For reasons stated below, depending upon resolution of other issues of fact relating to the intent of the parties, this court determines that an affidavit of title may be sufficient to support liability for damages sustained by one who relied thereon, as a result of unintentional inaccuracies in the representations therein contained.
In State v. Siegler, 12 N.J. 520, 525 (1953), it was held that "a signature to a sworn document imputes to the affiant knowledge of its contents even though it may not have been read by or to him." Additionally, to the extent that the above statements are ambiguous, such ambiguities are to be construed against the draftsman grantor-here the seller Bellows. Jennings v. Pinto, 5 N.J. 562, 569 (1950); Union Cty. Indust. Park v. Union Cty. Park Comm'n, 95 N.J. Super. 448, 453 (App.Div. 1967). Similarly, since this is a summary judgment motion, such ambiguities should be resolved against the movants, Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954); R. 4:46-2.
The fact that the parties bargained for only a bargain and sale deed with covenants against grantor acts, as opposed to a general warranty deed (see N.J.S.A. 46:4-7; 46:4-9), or one with other limited covenants (e.g., a covenant of seizin, see N.J.S.A. 46:4-3), suggests the possibility that the parties did not intend the affidavit of title to rise to the level of such deed warranties or covenants. Conversely, the relatively unambiguous nature of the four unqualified statements quoted above suggests that such warranties might well have been intended. While ordinarily parol evidence would not be permitted to vary *58 the terms of an integrated contract, the two contemporaneous documents (deed and affidavit of title) must be read together under all the circumstances of this case to determine the actual mutual intent of the parties. See Lawrence v. Tandy & Allen, 14 N.J. 1, 6 (1950); American Rieter Co. v. Dinallo, 53 N.J. Super. 388, 394 (App.Div. 1959); 23 Am.Jur.2d, Deeds, § 172 at 218 (1965). This conflict in inferences demonstrates that at least an issue of fact exists as to the intended effect of the affidavit and its statements.
Caton and Bellows apparently were of equal bargaining power, and were represented by counsel. The bargain which was struck involved no unfair advantage or unconscionability as to either. The parties were free to arrange for whatever degree of risk they desired, ranging from a quitclaim deed to a full-covenant warranty deed. The law does not require that the language used be technically precise in order to create a covenant or warranty in an agreement (cf. Broad & Brandford Place Corp. v. J & J Hockenjos Co., 132 N.J.L. 229, 236 (Sup.Ct. 1944)), or a deed (N.J.S.A. 46:4-7; 46:4-9; 46:4-11). Although the language of the affidavit of title herein does not parallel that of N.J.S.A. 46:4-3 and 46:4-5, it would be reasonable to interpret its language as intending the effects of covenants of seizin and freedom from encumbrances. Therefore, there is no reason to conclude that the parties intended no warranties whatsoever by the affidavit.
A written document of this kind which is given contemporaneously with the deed does not merge into it and lose its effect Lawrence v. Tandy & Allen, supra; Wellmore Builders, Inc. v. Wannier, 49 N.J. Super. 456, 463 (App.Div. 1958). As between the parties there is no prohibition against placing warranties or covenants (if under seal) in an affidavit as opposed to the recorded deed except that such covenants and warranties would then not be notice to the world under the Recording Act, N.J.S.A. 46:21-1. Some commentators have *59 anticipated precisely the claims here involved. In 21 N.J. Practice, (Ackerson & Fulop-Lodge, Skills and Methods) (2 ed. 1973), § 2068 at 80, it is noted that
It is also the practice for the seller to execute an affidavit at the closing of the sale and transfer of title containing definite assertions as to ownership and encumbrances and statements as to other matters which might affect title. The instrument is called an affidavit of title and its truth is relied upon by the purchaser in paying the price ...
More recently the function of an affidavit of title was described in Horn, Residential Real Estate Law and Practice in New Jersey, 87 (1979) as
... restricted to gathering and memorializing necessary facts. It should not be used to extend the sellers' liability for title defects to cover any time before they held title to the property.
Nonetheless, an examination of the statements by Bellows quoted above shows that the affidavit used here was not restricted to a memorialization of facts. Rather it seems to have fallen into one of the traps recognized by Horn, Id. at 87-88:
[U]pon examination it becomes apparent that this "usual form" [of affidavit of title] expands the limited seller's covenant far beyond the intention of the sellers and the expectation and needs of the purchasers ...
These representations extend the liability of the sellers from the modest personal covenant contained in the covenant as to the grantor's acts to the assumption of responsibility to the purchasers approaching that given by a full covenant and warranty deed ... The sellers' representations are not restricted to the period of time during which the sellers held title but in addition warrant title for all previous time.
For purposes of this motion, it must be assumed that the parties meant what the affidavit appears to state. The language is relatively clear, although at trial Bellows may be able to show that the combined use of the affidavit of title and bargain and sale deed was not intended to create warranties beyond the limited covenants against grantor acts as to unintentional misstatements.
The motion for summary judgment is therefore denied.
NOTES
[1] At the oral argument on March 31, 1980 the court denied summary judgment for reasons outlined on the record, and informed counsel that this opinion would follow.
[2] Bellows is not liable on the bargain and sale deed itself. As is noted in Horn, Residential Real Estate Law and Practice in New Jersey, 82 (1979):

A Bargain and Sale Deed without covenants conveys no greater estate than the grantor may lawfully convey. The grantor conveys whatever he owns and gives no covenants of any kind [Den v. Crawford, 8 N.J.L. 90 (Sup.Ct. 1825)] ...
The bargain and sale deed has also been described in 13 N.J. Practice (Lieberman, Abstracts and Titles (3 ed.)), § 314 at 225, as follows:
... Today, in simple terms, a Bargain and Sale Deed is a deed of conveyance without any covenants. It is a bare conveyance to the grantee of whatever interest the grantor has at the time of the conveyance.
In this respect New Jersey differs from other states in which the specific words of grant in the conveyance denote various warranties by statutory enactment. See 6A Powell on Real Property, § 886 at 191-192.
[3] It is also clear that no act of hers, or failure to act, led to any title which Durling has. The chain of events through which Durling claims was complete before Bellows took her title. Both the uses creating the prescriptive easement and claims of title in fee simple were traceable back to the 19th Century.