# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

January 27, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

ADVANTAGE FUNDING CORP., )
)
    Plaintiff/Appellant, )
) Montgomery Circuit
VS. ) No. C10-442
)
MID-TENNESSEE MANUFACTURING ) Appeal No.
CO., INC. and JAMES T. HALL, ) M1997-00133-COA-R3-CV
)
    Defendants/Appellee. )

APPEAL FROM THE CIRCUIT COURT FOR MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE JAMES E. WALTON, JUDGE

For Plaintiff/Appellant:

Steven R. Sharp
BUFFALOE & SHARP
Nashville, Tennessee

For Defendants/Appellee:

Not represented on appeal

## AFFIRMED IN PART; REVERSED IN PART AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a dispute arising out of a factoring agreement and a related personal guarantee. After the debtor declined to pay the receivable, the factor filed suit in the Circuit Court for Montgomery County against the company from which it purchased the receivable and the company's president alleging that the company had breached its warranties in the factoring agreement and that the company's president had refused to honor his personal guarantee. The trial court, sitting without a jury, awarded the factor a judgment against the company that sold the receivable but dismissed the factor's claims against the seller's president. The factor asserts on this appeal that the trial court erred by dismissing its claim against the seller's president based on his personal guaranty. We agree and, therefore, reverse the portion of the order dismissing the claims against the seller's president.

## I.

Mid-Tennessee Manufacturing Company, Inc. is a small business located in Clarksville, Tennessee. Its president was James Ted Hall, and its vice president and chief financial officer was Darrell M. Ray. Like many small businesses, Mid-Tennessee Manufacturing had accounts receivable from its customers which it was required to actively manage to ensure a dependable cash flow. This case arises out of the company's efforts to manage some of its accounts receivable.

In December 1993, Mid-Tennessee Manufacturing sold United Circuits, Inc. approximately $27,000 worth of microprocessors. The terms of the sale required United Circuits to pay for the goods within sixty days. In order to raise cash before United Circuits's payment was due, Mr. Ray, with Mr. Hall's agreement, contacted Advantage Funding Corporation about buying the United Circuits receivable. Advantage Funding sent Mid-Tennessee Manufacturing its standard contract documents with instructions to complete them and to return them along with United Circuits's credit information. As reflected in these documents, the factoring agreement contained the following material terms: (1) the sale of the accounts receivable would be without recourse; (2) Mid-Tennessee Manufacturing would warrant that the amount of the receivable was not and would not be in dispute and that the account was not and would not be subject to defenses, set-offs, or counterclaims, and (3) Mr. Hall would provide his individual guarantee securing these warranties. The documents gave Advantage Funding a claim against both Mid-Tennessee Manufacturing and Mr. Hall if any warranties concerning the receivable were breached.

Mr. Ray completed the documents, obtained Mr. Hall's signature where required,[1] and returned the completed documents to Advantage Funding. In mid-January 1994, Advantage Funding informed Mr. Ray that it had decided not to purchase the United Circuits receivable.

---

[1]Mr. Hall testified that Mr. Ray was responsible for completing the paperwork to sell the receivable and that he "signed these blank forms [on January 6, 1994] for Mr. Ray so that he could overnight this information down to Advantage Funding to do this deal." He explained that he signed several blank forms of each document in case Mr. Ray made a mistake.

Mr. Ray, in turn, informed Mr. Hall of Advantage Funding's decision. With this news, Mr. Hall assumed that he was no longer exposed on his personal guarantee.[2]

Mid-Tennessee Manufacturing's need for short-term operating cash did not evaporate after Advantage Funding rejected the United Circuits receivable. In February 1994, Mr. Ray decided to offer Advantage Funding another receivable stemming from a $17,995 transaction with John Farmer & Associates, Inc. To complete the transaction, he used the papers remaining from the United Circuits transaction, including Mr. Hall's executed personal guarantee, and forwarded them to Advantage Funding without Mr. Hall's knowledge.

Advantage Funding found this receivable attractive and forwarded a copy of the completed account invoice to Farmer containing an acknowledgment that the work had been completed and accepted, that the amount of the invoice was correct and was now due and owing, and that the amount due was not subject to any offsets, deductions, or defenses.[3] Farmer executed the acknowledgment and returned it to Advantage Funding. With the acknowledgment in hand, Advantage Funding executed the factoring documents and paid Mid-Tennessee Manufacturing $12,596.50 for the Farmer receivable.

Farmer ultimately declined to pay for the goods because some or all of the items were defective. When its demands on Farmer for payment were to no avail, Advantage Funding informed Mid-Tennessee Manufacturing that Farmer had refused to pay the assigned account because it was unhappy with the goods. Advantage Funding reminded Mid-Tennessee Manufacturing that any dispute between Mid-Tennessee and Farmer over the account constituted a breach of the warranties in the factoring agreement. It also reminded Mid-Tennessee Manufacturing that the dispute also triggered Mr. Hall's personal guarantee.

It was at this point that Mr. Hall first learned of his company's factoring agreement with Advantage Funding for the Farmer receivable. Mid-Tennessee Manufacturing attempted unsuccessfully to satisfy Farmer, and Farmer continued to decline to pay the

---

[2]Mr. Hall testified at trial that he was "going along fat, dumb, and happy thinking . . . [that] Advantage Funding had said no [on the United Circuits receivable]; and I'm off doing bigger and better things."

[3]The exact terms of the acknowledgment were as follows:

> The undesigned hereby acknowledges that this payment is not dependent on any contingencies or further work to be performed. That the work has been completed and accepted, that the invoice amount is correct and is now due and owing, and not subject to any offsets, deductions, or defenses known or unknown, whether now existing or arising in the future. We acknowledge that you are relying on these representations in paying over money to your assignor and we [illegible] that we shall make payment in full as set forth above to you, ADVANTAGE FUNDING CORP., as lawful assignee.

factored account. After its attempts to collect from Farmer failed, Advantage Funding made demand on Mid-Tennessee Manufacturing on the ground that Mid-Tennessee Manufacturing had violated its warranties in the factoring agreement.

Advantage Funding filed suit against Mid-Tennessee Manufacturing and Mr. Hall in the Circuit Court for Montgomery County for breach of the factoring agreement and Mr. Hall's personal guarantee. Mid-Tennessee Manufacturing did not contest the suit. Following a bench trial, the trial court awarded Advantage Funding a $21,377.87 judgment against Mid-Tennessee Manufacturing for the contract amount, pre-judgment interest, and attorney's fees. However, the trial court dismissed Advantage Funding's claim against Mr. Hall on two grounds. First, the trial court found that neither Mid-Tennessee Manufacturing nor Mr. Hall had breached the warranties in the factoring agreement. Second, the trial court found that Mr. Hall had been unaware of the factoring of the Farmer receivable and never intended to personally guarantee the warranties regarding the Farmer receivable. Advantage Funding now appeals the trial court's dismissal of its claims against Mr. Hall.

## II.

This appeal involves only legal issues because the facts, although not completely developed,[4] are not in dispute. Advantage Funding contends that the trial court erred by concluding that Mr. Hall's execution of the blank personal guarantee form did not create an enforceable personal obligation. It also contends that the trial court erred by concluding that Mr. Hall's liability under his personal guarantee was never triggered because there was no breach of the warranties in the factoring agreement. Because these contentions involve only questions of law, our review of the trial court's decision will be de novo without a presumption of correctness. *See In re Estate of Hume*, 984 S.W.2d 602, 604 (Tenn. 1999); *Quarles v. Shoemaker*, 978 S.W.2d 551, 552 (Tenn. Ct. App. 1998). We first take up the question of the enforceability of Mr. Hall's personal guarantee. If Mr. Hall did not personally guarantee the factoring agreement, the issue involving the breach of the warranties in the agreement is moot

### A.
### MR. HALL'S PERSONAL GUARANTEE

While the trial court described Mr. Hall as "negligent" for executing the blank personal guarantee forms, it declined to enforce the terms of the guarantee because it concluded that Mr. Hall did not "intend" to personally guarantee the factoring agreement covering the Farmer receivable.[5] The trial court also concluded that Advantage Funding

---

[4]For example, the only evidence that the goods involved in the Farmer transaction were defective or non-conforming is hearsay. In addition, because neither party called Mr. Ray as a witness, the only evidence we have of his actions, other than his signature on some documents, comes from inferences and second-hand accounts.

[5]The trial court specifically stated: "I do not believe Mr. Hall ever knew of the sale of the
(continued...)

could not enforce Mr. Hall's personal guarantee because it failed to confirm his intent to personally guarantee the warranties in the factoring agreement. By placing this burden on the party who innocently accepts an apparently valid, signed document, the trial court focused too myopically on Mr. Hall's intent and ignored the larger considerations of the need for reliability and predictability in the area of commercial account financing.

Mr. Hall is not the first person, nor will he be the last, to execute a form document that has not been completely filled out and then relinquish possession or control of the document to others. That scenario has recurred so frequently that a body of law has grown up around it. The cases on this subject divide into two branches: those where only two parties are involved and those involving the rights of innocent third parties.

One of the most basic rules of contract formation is that a person who signs a written document embodying an agreement with another party is bound by the terms of the signed agreement. This is true even if the person signing the document did not read what he or she signed. *See Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993). If, however, the document does not embody an enforceable agreement because material terms have been omitted, the courts must decide whether the missing terms can be supplied by operation of law or whether the parties simply never made a binding agreement. At this point, the focus of the inquiry devolves upon who supplies the additional terms, whether the additional terms are expressly or impliedly authorized, and, if applicable, whether enforcing the agreement as construed will affect the rights of third parties.

For example, a person rightfully possessing a signed document containing blanks has the implied authority to fill in these blanks in such a way "as was anticipated by [the signer]." *Holman v. Higgins*, 134 Tenn. 387, 394, 183 S.W. 1008, 1010 (1916); *see also First Nat'l Bank v. Hull*, 204 N.W.2d 90, 94 (Neb. 1973). By filing in the blanks in a document in this way, the person deemed acting for the person who signed the document merely causes the completed document "to speak in accord with its intended purpose and use." *Holman v. Higgins*, 134 Tenn. at 391, 183 S.W. at 1009. In this circumstance, filling in the blanks after the document was signed completes a contract that the law will enforce.

A slightly different rule applies when the party filling in the blanks is the other contracting party. The fact that the document contains blanks does not, by itself, invalidate the agreement, *see Sidwell Oil & Gas Co. v. Loyd*, 630 P.2d 1107, 1113 (Kan. 1981), even if the agreement is a guarantee agreement. *See, e.g., North Carolina Nat'l Bank v. Corbett*, 156 S.E.2d 835, 837 (N.C. 1967). However, if the party fills in the blanks in an unauthorized manner, the person who signed the document containing the blanks may avoid the agreement. *See Sidwell Oil & Gas v. Loyd*, 630 P.2d at 1113. These insertions will not bind the signer if the instrument, as completed, does not reflect the parties' true agreement. *See*

(...continued)
accounts receivable of John Farmer and Associates. I do not believe he ever intended to be personally liable . . .."

*Strother v. Shain*, 78 N.E.2d 495, 496 (Mass. 1948); *Kidder v. Greshman*, 187 N.E. 42, 46 (Mass. 1933); *First Nat'l Bank v. Walker*, 544 S.W.2d 778, 784 (Tex. App. 1976).

Yet another set of principles come into play when a third person's rights are involved. When a person signs a contract containing blanks and delivers it to another person with express or implied authority to fill in the blanks, the courts will enforce the agreement as completed when the rights of an innocent holder for value would be prejudiced if the completed agreement were not enforced. This principle applies even when the blanks have not been completed in accordance with the intentions or instructions of the signer. *See Greer v. Parks*, 2 N.W.2d 476, 478 (Mich. 1942); *Fanning v. C.I.T. Corp.*, 192 So. 41, 44 (Miss. 1939); *J.R. Watkins Co. v. Keeney*, 201 N.W. 833, 836 (N.D. 1924).[6] The courts invoke this principle when (1) the signer intended to execute a contract of some sort, *see First Nat'l Bank v. Zeims*, 61 N.W. 483, 484 (Iowa 1894), and (2) the signer gave the instrument to someone other than the other contracting party with either express or implied authority to complete it. *See Farmers' & Merchants' Nat'l Bank v. Novich*, 34 S.W. 914, 915 (Tex. 1896).

This case calls for the application of the principles intended to protect the interests of third parties. Mr. Hall intended to contract with Advantage Funding to personally guarantee his company's factoring agreement. To that end, he executed his personal guarantee form in blank and entrusted it to Mr. Ray, the company's chief financial officer, to complete and transmit to Advantage Funding along with the other necessary paperwork. Mr. Ray completed the document and forwarded it to Advantage Funding. Upon receipt of the paperwork, Advantage Funding disbursed funds to Mid-Tennessee Manufacturing having no basis to suspect that the factoring documents, including Mr. Hall's personal guarantee, were not authorized or authentic.

The record shows that Messrs. Hall and Ray agreed that factoring would be a part of Mid-Tennessee Manufacturing's management of its accounts receivables. The record also shows that Mr. Hall explicitly agreed to personally guarantee the United Circuits receivable. It does not show, however, that Mr. Hall ever effectively limited his willingness to personally guarantee factoring agreements to the United Circuits receivable. Thus, although Mr. Ray filled in the blanks with the name of a customer that Mr. Hall did not have in mind, Mr. Hall became legally bound on his personal guarantee once the signed document was tendered to Advantage Funding and Advantage Funding disbursed funds relying on the authenticity of the signed documents. Any remedy Mr. Hall may have lies against Mr. Ray. *See generally Walker v. Skipwith*, 19 Tenn. (Meigs) 502, 508 (1838) (indicating that although the principal is bound by the agent's act, the agent is bound to indemnify the principal for the loss sustained).

---

[6]This rule is an example of the maxim "*melior est conditio possidentis*" or "*w*henever one of two innocent parties must suffer by the acts of a third, the party who enabled the third person to occasion the loss must bear it." *See Holman v. Higgins*, 134 Tenn. at 394; 183 S.W. at 1010; *Union Bank & Trust Co. v. Fred W. Wolf Co.*, 114 Tenn. 255, 266, 86 S.W. 310, 312 (1905); *see also Rose v. Douglass*, 34 P.1046, 1047 (Kan. 1893); Henry R. Gibson, *Gibson's Suits in Chancery* § 28 (William H. Inman ed., 6th ed. 1982); R.H. Kersley, *Broom's Legal Maxims* 488 (10th ed. 1939).

# B.
## THE BREACH OF THE WARRANTIES IN THE FACTORING AGREEMENT

Advantage Funding also takes issue with the trial court's conclusion that Mr. Hall would still not be liable on his personal guarantee, even if it were enforceable against him, because of the lack of evidence that the warranties in the factoring agreement were breached. It asserts that these warranties were breached when Farmer declined to pay for the goods because they were defective. We agree.

A warranty like the one involved in this case is contractual. *See Au v. Au*, 626 P.2d 173, 180 (Haw. 1981); *Flaherty v. Weinberg*, 492 A.2d 618, 627 (Md. 1985); *Boudreau v. Baughman*, 368 S.E.2d 849, 854 (N.C. 1988). It is an assurance by one party to a contract of the existence of a fact upon which the other contracting party may rely. It is intended to relieve the promissee of any duty to ascertain a fact for itself, and it amounts to a promise to indemnify the promissee for any loss if the warranted fact proves untrue. *See Lilly Indus., Inc. v. Health-Chem. Corp.*, 974 F. Supp. 702, 711 (S.D. Ind. 1997); *Walter Dawgie Ski Corp. v. United States*, 30 Fed. Cl. 115, 126 (Fed. Cl. 1993); *Hoover v. Nielson*, 510 P.2d 760, 763 (Ariz. Ct. App. 1973); *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 127 (Minn. Ct. App. 1998).

A contractual warranty may be express or implied. *See Ramage v. Forbes Int'l, Inc.*, 987 F. Supp. 810, 816 (C.D. Cal. 1997); *Camino Real Mobile Home Park Partnership v. Wolfe*, 891 P.2d 1190, 1196 (N.M. 1995); *Lucas v. Canadian Valley Area Vocational Technical Sch.*, 824 P.2d 1140, 1141 (Okla. Ct. App. 1992). It need not be stated in any particular or technical language. *See Taratus v. Smith*, 263 S.E.2d 145, 146 (Ga. 1980); *County of Somerset v. Durling*, 415 A.2d 371, 374 (N.J. Super. Ch. Div. 1980). A breach of warranty occurs when the warranted fact or condition is in reality not as represented. *See generally Dailey v. Holiday Distrib. Corp.*, 151 N.W.2d 477, 482 (Iowa 1967). A person seeking to prove a breach of warranty has the dual burden of proving the pertinent terms of the warranty and the fact that those terms were breached. *See Collier v. Rice*, 356 S.E.2d 845, 847 (Va. 1987).

A nonrecourse factor, like Advantage Funding, takes the risk for collecting the assigned receivable with no right back against the assignor as long as the assignor, if the seller of the goods, has delivered the goods and the buyer has accepted them without dispute. *See Takisada Co. v. Ambassador Factors Corp.*, 556 N.Y.S.2d 788, 789 (N.Y. Sup. Ct. 1989). The factoring agreement in this case reflects this arrangement in that it provides that if Farmer did not pay the assigned account, Mid-Tennessee Manufacturing would not be obligated to repay Advantage Funding. Thus, the assignment of the account to Advantage Funding generally shifted the risk of collection from Mid-Tennessee Manufacturing to Advantage Funding.

We use the term "generally" with regard to shifting the risk of collection because the agreement also contains provisions designed to protect Advantage Funding in the event of a disputed account. These protections are in the form of express warranties stating that

> Seller [Mid-Tennessee Manufacturing] represents and warrants that:
>
> . . . .
>
> (c)     The Account is currently due and owing to Seller and the amount thereof is not and will not be in dispute or subject to any defenses, and the payment of the Account is not and will not be contingent upon the fulfillment of any past, existing or future contract(s).
>
> (d)     There are no set-offs or counterclaims against the Account . . ..

Mr. Hall personally guaranteed these warranties. The personal guarantee he signed states that "[t]he undersigned hereby personally guarantee(s) and shall be jointly and severally liable for the warranties, representations and covenants made by Mid-Tennessee . . .."

The trial court appears to have based its conclusion that the warranties in the factoring agreement were not breached on the invoice acknowledgment that Farmer executed, at Advantage Funding's request, on February 2, 1994. Farmer stated in the acknowledgment that Mid-Tennessee Manufacturing's work had been completed and accepted and that the accompanying invoice was not subject to any defenses. Advantage Funding had the right to rely on Farmer's representations when they were made but was not bound by these representations when Farmer later changed its mind.

Based on this meager record, we can only conclude that at some point after February 2, 1994, Farmer changed its position about accepting the goods and disputed its obligation to pay the account. No matter how Farmer's claim is characterized, once Farmer began to dispute the account, Mid-Tennessee Manufacturing was in breach of its warranty that the account "is not and will not be in dispute." Once a dispute over the account arose, whether meritorious or not, the warranty in the factoring agreement was breached, and the factor had the right to seek damages from the assignor of the account. *See Exportos Apparel Group, Ltd. v. Chemical Bank*, 593 F. Supp. 1253, 1255-56 (S.D.N.Y. 1984); *Takisada Co. Ltd. v. Ambassador Factors Corp.*, 556 N.Y.S.2d at 789-90.

When we construe the factoring agreement and Mr. Hall's guarantee together, as we must, *see Oman Constr. Co. v. Tennessee Cent. Ry. Co.*, 212 Tenn. 556, 573, 370 S.W.2d 563, 570 (1963); *Hardeman County Bank v. Stallings*, 917 S.W.2d 695, 698 (Tenn. Ct. App. 1995), the legal conclusion becomes inescapable. Mid-Tennessee Manufacturing's breach of the "no-dispute" warranties as to the Farmer account brought into play Mr. Hall's guarantee of those warranties. Because those warranties had been breached, Mr. Hall became personally liable, jointly and severally with Mid-Tennessee Manufacturing, under the guarantee's terms. Accordingly, the trial court improperly dismissed Advantage Funding's case against Mr. Hall personally.

### III.

We affirm the judgement against Mid-Tennessee Manufacturing and reverse the dismissal of Advantage Funding's claims against Mr. Hall personally. The case is remanded to the trial court with directions to enter a judgment for Advantage Funding and against Mr. Hall personally for $21,377.87. Interest shall run from the date of the entry of this judgment. The costs are taxed against James T. Hall for which execution, if necessary, may issue.

                       _____

                       WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, JUDGE