FRANK E. GOULD

*v.*

THE MAGNOLIA METAL COMPANY.

*Opinion filed February 17, 1904.*

1. EVIDENCE—*effect of section 34 of Practice act.* The only effect of failing to deny, under oath, the execution of a contract, as provided in section 34 of the Practice act, is to make the contract admissible without proof of execution, and does not preclude introduction of evidence explanatory of the meaning of the contract, which is set out *in hœc verba* in the declaration.

2. SAME—*all writings evidencing same agreement are admissible.* If an agreement is evidenced by more than one writing, all of them are to be read together and construed as one contract, and all writings executed at the same time and relating to the same subject matter are admissible.

3. SAME—*what admissible in justification of discharge of plaintiff from employment.* Under a provision of the contract under which plaintiff, a traveling salesman, was discharged from employment, providing for such discharge in case of plaintiff's neglect of duty or any conduct on his part reflecting discredit upon his employer or its business, proof that he habitually associated with disreputable people is competent, as tending to justify his discharge.

4. CONTRACTS—*when letter and conversation are part of a contract.* If an employee, in making a contract of employment, desires the conditions for terminating the contract shall not be specifically stated therein on account of their offensive nature, but prefers to write a letter agreeing thereto, the letter, and a conversation to which the letter refers as a basis of the agreement, are part of the contract.

5. SAME—*when condition of contract is valid.* A party employing a married man to act as traveling salesman may make it a condition of the employment that the employee shall not associate with a certain woman to whom he owes no legal obligation.

6. INSTRUCTIONS—*when party cannot complain of instruction.* The plaintiff in an action for breach of contract cannot complain that defendant's instructions submitted the question of what was sufficient legal ground for discharge, under the contract, to the jury, where his own instructions submit the same question for decision.

*Gould* v. *Magnolia Metal Co.* 108 Ill. App. 203, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

IRA W. & C. C. BUELL, and P. H. BISHOP, for appellant.

WING & WING, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is a suit in assumpsit, brought by appellant in the circuit court of Cook county for damages resulting from an alleged breach of a contract hiring appellant as salesman and representative of appellee for one year from December 1, 1899, at $5000 per annum. The contract was in writing and contained the following paragraph:

"*Seventh*—It is further understood and agreed that the party of the first part shall have the right to end this agreement at any time for neglect of duty, willful disobedience of instructions, or for any conduct on the part of the party of the second part that would reflect discredit on the party of the first part or be injurious to their business interests or reflect discredit upon their methods of conducting business."

Appellee is the party of the first part to the contract, and discharged appellant April 21, 1900, by means of a letter written from New York. The letter stated that appellant was discharged in accordance with said provision of the contract, and assigned as reasons for the discharge that he had neglected the business of appellee while at Boston; that he had given offense to customers; that he had passed much time in company with disreputable women, and had renewed and maintained relations with a certain woman with whom he had formerly associated in Pittsburg; that he had brought her to Boston and introduced friends of appellee to her, and had taken her to Portland and elsewhere, maintaining the same relations with her as he formerly did at Pittsburg, and that such conduct was injurious to appellee's business interests and reflected much discredit upon it. Appellant was paid to the time of the discharge. The trial

resulted in a judgment for appellee, which was affirmed by the Appellate Court for the First District.

The first alleged error presented in argument is the admission in evidence of the following letter written by the plaintiff to the defendant in connection with the execution of the contract:

"NEW YORK, *Dec. 2, 1899.*

"*Mr. E. C. Miller, Vice-Pres't Magnolia Metal Co., New York:*

"MY DEAR SIR—Inasmuch as certain matters of a private nature to me have been brought to your attention, and knowing that you consider same to be, if continued, detrimental, not only to myself but to the company, I wish to say that upon conditions of our renewing contract for my services I reiterate in full my conversation to you of yesterday. That as far as concerns me you will not in future have any occasion to refer to the matter again.

"Yours very truly,      F. E. GOULD."

Plaintiff had previously been in the employ of defendant. He had a wife and child, and had publicly and intimately associated in Pittsburg, during such employment, with a woman named Bessie VanHansen. There was evidence tending to prove that defendant refused to renew the contract of employment unless he agreed specifically to cut his acquaintance with that woman and have nothing more to do with her; that Mr. Miller, the vice-president and general manager of defendant, told plaintiff that defendant regarded the association as bad for its business; that such association had been the cause of his removal from Pittsburg at the request of defendant's agents, and that defendant proposed to have this agreement incorporated in the contract, but that plaintiff said it was of such an offensive nature he would not do it that way but would write a letter to that effect. Plaintiff testified that the conversation with Miller and the condition of renewal related to his marital relations, but it was not denied that he wrote the letter and delivered it. It was a part of the same transaction with the execution of the contract, and was understood by both

parties to be a part of the agreement or in explanation of its meaning.

The first objection to the letter is, that it was not admissible, under the pleadings, because the contract was set out *in hæc verba* in the declaration and its execution was not denied under oath, as provided by section 34 of the Practice act. It is argued that by failing to deny the execution of the contract as set out, defendant admitted that it constituted the whole contract and agreement between the parties, and that if defendant claimed it was not the whole contract it should deny its execution. That section of the Practice act establishes a rule of evidence, and dispenses with proof of the execution of a written instrument declared upon unless the execution is denied by a verified plea. The execution of the contract as set out in the declaration was not, and could not truthfully be, denied by the defendant, and the letter did not tend to make a new or different contract or substitute another one. The only effect of failing to deny the execution of the contract was to make it admissible in evidence without proof of its execution. A verified plea was not necessary to permit the introduction of evidence explanatory of its meaning.

A second ground of objection is, that the letter tended to vary a contract which was complete in itself. It is the rule that testimony is inadmissible to contradict or vary the terms of a contract which purports to contain the whole agreement of the parties and shows no uncertainty as to the object or extent of such agreement. In such a case it is conclusively presumed that all previous and contemporaneous engagements by which the parties intend to be bound are contained in the writing. On the other hand, it is equally well established that where the agreement is evidenced by more than one writing, all of them are to be read together and construed as one contract, and all the writings executed at the same time and relating to the same subject matter are admissible in

evidence. (*Stacey* v. *Randall*, 17 Ill. 467; *Gardt* v. *Brown*, 113 id. 475; *Crandall* v. *Sorg*, 198 id. 48; 1 Greenleaf on Evidence, sec. 283.) In this case the writings were executed as different parts of the same agreement and related to the same subject matter. Together they were understood and intended by the parties to constitute the agreement. If, as the evidence tended to prove, the language employed in the seventh paragraph was not made more explicit on account of the offensive nature of the matter referred to and plaintiff preferred to write the letter, it did not involve any variance from the contract, but only enabled the court to definitely ascertain and carry out the meaning and intention of the parties. The letter did not vary, contradict or add to the contract set out in the declaration in any material respect. It is clear from the evidence that the seventh paragraph related either to the marital relations of the plaintiff, as claimed by him, or to his association with the other person, as claimed by the defendant, and the letter operated both as a part of the contract and as an explanation of the meaning of its terms.

The court admitted, over the objection of the plaintiff, evidence of the conversation between plaintiff and Miller which the letter stated was reiterated in full upon condition of renewing the contract. The substance of this conversation is given above. It is manifest the letter was incomplete and meaningless without the conversation which was thereby reiterated. The conversation was not copied into the letter, but, in effect, was incorporated by reference to it, and proof of the conversation was admissible. Counsel say that in detailing the conversation referred to in the letter the witness Miller was allowed to state a previous conversation. The court did not admit evidence of a prior conversation, but refused to strike out an answer in which the witness said that the conversation detailed was the same as plaintiff had previously said to him at Pittsburg in relation to his

wife and the VanHansen woman. It was merely a state-
ment that what was said had been said before, and was
not harmful to the plaintiff.

It is next insisted that the court erred in admitting
evidence "(1) concerning the marital relations of appel-
lant; (2) concerning the relation between plaintiff and
Bessie VanHansen; (3) concerning the general reputation
for chastity of Bessie VanHansen; (4) concerning the
disease for which Dr. Pudor treated Bessie VanHansen;
(5) concerning the relations of Bessie VanHansen's sister
and a man named Whitelsey; (6) concerning the general
reputation for chastity of Bessie VanHansen's sister; (7)
concerning a letter signed 'Emma,' received by appel-
lant." The evidence so admitted related to the conduct
and habits of plaintiff and the reputation and charac-
ter of his associates. It showed that after the making
of the contract, plaintiff, when located in Boston in the
service of defendant, renewed his relations with Bessie
VanHansen; that she came to Boston and he took her to
Portland, Maine, to a hotel, where she remained for some
time; that he took her at that place to a blood-disorder
specialist and placed her under treatment for a disease
of a private nature; that he paid the doctor's bills, run-
ning at least a year; that he paid her hotel bills while
there, and associated with her, leaving Boston weekly
to go and visit her at Portland; that her general repu-
tation was bad; that the reputation of her sister, whom
he had met in Pittsburg, was bad, and he understood her
relations with the man Whitelsey to be improper; that
plaintiff received the letter signed "Emma," from Boston,
and that he knew a woman of that name at a house which
he had visited and the persons named in the letter were
his acquaintances. The letter was full of vile language
and filthy statements concerning plaintiff's acquaint-
ances named in it and could not have emanated from any
but the lowest possible source. We think it was entirely
competent to make this proof, under the contract set out

in the declaration, regardless of the letter, and for still stronger reasons in view of the letter.

Counsel, in commenting on instructions given to the jury, insist that the question what would constitute an adequate cause or legal ground for the discharge of the plaintiff under the contract was a question of law for the court. That is undoubtedly true, although the plaintiff could not complain of that question being submitted to the jury, for the reason that by his own instructions he caused the same question to be submitted for decision. What facts would constitute a legal ground for discharge is not to be determined by the judgment of the jury, but is a question for the court, and there is no controversy as to the existence of the facts relied upon as a ground for discharge. We have no hesitancy in saying that such facts constituted ample legal ground for plaintiff's discharge, and that the disgraceful conduct of plaintiff would naturally reflect discredit on his employer and be injurious to its business interests. For a business concern to select, as a matter of choice, a person of such habits and associates would tend to discredit the employer in the estimation of decent people with whom it was doing business, and to say that such people would be as willing to do business through such a representative as with a reputable person would be equally an affront to decency and common sense.

A further ground of objection to some of this evidence is, that the defendant was permitted to cross-examine the plaintiff upon matters which had not been inquired into on his direct examination. Plaintiff, when testifying, identified the letter discharging him, which stated at length the reasons for his discharge, and the letter was offered in evidence. He then identified a letter written by him to the defendant denying the right to discharge him, in which he said that the statements of the letter to him that his conduct had been injurious to defendant's business interests or reflected discredit upon it, or that any act of his had been a sufficient excuse for dispensing

with his services, were false. He was then cross-examined as to such facts, and while considerable latitude was allowed, we think the court did not abuse its discretion.

There are some objections to instructions, one of which has already been noticed, and some others relating to the question of damages have become immaterial in view of the verdict and judgment. It is objected to the third instruction given at the request of defendant, that it did not limit the jury to the contract signed by the parties and introduced in evidence. The instruction stated that if the jury believed that at the time of entering into the contract plaintiff promised, as a condition thereof, he would refrain, during such employment, from publicly associating with Bessie VanHansen, but during the employment did openly and publicly associate with her, the verdict should be for the defendant. It will be seen that we do not regard this instruction as erroneous from what we have said as to the admissibility of the letter and conversation. But it is further urged that the agreement to not publicly associate with Bessie Van-Hansen was an independent contract, not constituting a breach of the contract of employment but for which defendant might sue plaintiff for damages, if it sustained any. The parties had a right to make it a condition of the employment, or a continuance of it, that plaintiff should refrain from publicly associating with Bessie Van-Hansen, and the evidence showed that it was a condition of the employment and not an independent covenant.

An objection is made to the fifth instruction on practically the same ground as to the third. It was a repetition of the third, and the practice of emphasizing instructions by repetition is not proper, but there was no error in the statement of the law and the giving of it is not ground for reversal.

The sixth instruction stated that it was proper for a party employing a married man as a salesman to make it a condition of employment that he should not asso-

ciate with a certain woman to whom he owed no legal duty, and application of that rule was made to the facts of the case. It is objected to, as suggesting a distinction between the rights and liabilities of a married and a single man employed to sell babbit metal, and it is said that any tendency to make such a distinction should be frowned upon as against public policy. We do not know of any rule of public policy that would prevent the parties making such a contract.

We find no error in the record. The judgment of the Appellate Court is affirmed.        *Judgment affirmed.*