SIDNEY LAWRENCE AND HILDEGARDE LAWRENCE, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. TANDY & ALLEN, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued November 2, 1953—Decided November 30, 1953.

Mr. *Maurice C. Brigadier* argued the cause for appellant (*Messrs. Draesel & Dorfman,* attorneys).

Mr. *Sam Denstman* argued the cause for respondents (*Messrs. Milton M. and Adrian M. Unger,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. The respondents, Sidney Lawrence and his wife, late in 1951 became interested in purchasing a dwelling then under construction by the appellant at 96 Oak Trail Road, Hillsdale, Bergen County. The negotiations culminated in a contract for the purchase and sale of the house, when completed, on the lot upon which it was being erected, for the sum of $23,500, the appellant agreeing to erect upon said premises "a one family dwelling substantially similar in workmanship, material and design (except for changes, if any, hereinafter set forth) to the sample house exhibited to the Purchaser at Lot 5, Block 8–13 Saddle Wood Hills, Hillsdale, Bergen County, New Jersey."

During the negotiations Mr. Lawrence examined the dwelling under construction and became apprehensive about the accumulation of water in the cellar. He was assured this condition was transitory and was due merely to exposure to the elements.

Not being satisfied with the explanation, however, on October 27, 1951, when the contract was about to be signed, he insisted it contain an undertaking by the appellant that

the cellar would be and remain dry. He prepared a memorandum embodying his suggestions and requested it be incorporated in the contract. The appellant agreed to the guarantee but demurred to its being included in the contract because it was a prepared form and would make matters "too complicated." A separate memorandum was therefore drafted and signed by the owner, upon which the respondents immediately signed the contract of sale and paid the deposit called for therein. It read thusly:

"In connection with the sale of premises located on Lot No. 9 as shown on a map entitled 'Map of Hill Section, Saddle-Wood Hills, Boro of Hillsdale' I agree to deliver to you a written guarantee against a wet cellar to expire one year from the date of the delivery of the deed.

Very truly yours
Tandy & Allen, Inc.
s/Norman Tandy

10/27/51                                                        Sec'y"

and was marked in evidence as P–3.

When the title was closed, a deed was tendered containing no commitment by the appellant concerning the condition of the basement. Lawrence refused to proceed with the closing without a guarantee as had been promised when the contract was signed. The appellant thereupon produced a document, P–4, which read as follows:

"Mr. and Mrs. Sidney Lawrence
96 Oak Trail Road
Hillsdale, N. J.
Dear Mr. and Mrs. Lawrence:
    This is to certify that the undersigned hereby guarantees a dry cellar in the premises known as 96 Oak Trail Road, Hillsdale, N. J. for a period of one year from the date hereof.

Sincerely yours,
Tandy & Allen, Inc.
By s/Herman Eidukot"

When this writing was delivered to the respondents, they accepted a deed for the premises in question and paid the balance of the purchase price.

The respondents moved into the new home and water continuously accumulated in the cellar, seeping through the floor of the basement and the side walls. Some effort was made by the appellant to remedy the situation but without success. Finally, the respondents were advised in writing that the builder would "recognize no legal liability under the terms of our guarantee for the condition of * * * the cellar * * *."

After the disavowal of the warranty, repairs to the basement were undertaken by the respondents to render it waterproof, and this action was instituted to recover the amount so expended. The jury returned a verdict of $2,803, whereupon an appeal was taken to the Superior Court and certified here by our own motion.

The appellant insists the agreement to give a "guarantee" is *nudum pactum*, being unsupported by consideration, and the "document itself is insufficient in law to alter, modify or add to the terms of the written agreement to sell." The authorities, it asserts, are legion in support of the well-established doctrine that matters extrinsic to a complete written instrument cannot have the force or effect of modifying the document, citing amongst others *Naumberg v. Young*, 44 *N. J. L.* 331 (*Sup. Ct.* 1882); *Booye v. Ries*, 102 *N. J. L.* 322 (*E. & A.* 1925); *Platt v. Currie*, 100 *N. J. Eq.* 543 (*E. & A.* 1926); *Codd v. Shepard Builders, Inc.*, 129 *N. J. L.* 190 (*Sup. Ct.* 1942); *Ross v. Orr*, 3 *N. J.* 277 (1949); *Winoka Village, Inc., v. Tate*, 16 *N. J. Super.* 331 (*App. Div.* 1951); *Wilkins v. Bailey Engineering Co., Inc.*, 21 *N. J. Super.* 227 (*App. Div.* 1952).

The rule, firmly entrenched as it is, nevertheless has exceptions and is not universal in its application. Many cases hold where several writings are made as part of one transaction relating to the same subject matter, they may be read together as one instrument, and the recitals in one may be explained, amplified or limited by reference to the other—the one draws contractual sustenance from the other. See *Schlossman's, Inc., v. Radcliffe*, 3 *N. J.* 430 (1950).

Greenleaf, referring to the rule, says:

"It is in the first place to be observed that the (parol evidence) rule does not restrict the Court to the perusal of a single instrument or paper; for while the controversy is between the original parties, or their representatives, all their contemporaneous writings, relating to the same subject matter, are admissible in evidence." 1 *Greenleaf on Evidence* (16th ed.), 411, sec. 282.

In *Gould v. Magnolia Metal Co.*, 207 *Ill.* 172, 69 *N. E.* 896, 898 (*Sup. Ct.* 1904), dwelling upon the same topic, the court said:

"It is equally well established that, where the agreement is evidenced by more than one writing, all of them are to be read together and construed as one contract, and all the writings executed at the same time and relating to the same subject-matter are admissible in evidence."

In *Atlantic Northern Airlines, Inc., v. Schwimmer*, 12 *N. J.* 293 (1953), this court, speaking of a written contract and the intent of the parties, said:

"Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties, but the intent must be judged by an external standard. The writing is not 'wholly and intrinsically self-determinative of the parties' intent to make it the sole memorial' of the subject of negotiation; this intent 'must be sought where always intent must be sought, namely, in the conduct and language of the parties and the surrounding circumstances. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered.' "

And again:

"Thus the basic question here is whether the parties assented to the writing as the complete integration of their agreement. The writing itself is not conclusive of this issue. But it is an influential evidential factor, even though not necessarily decisive of this factual inquiry."

In a situation practically parallel, involving a leaky basement in a house erected to "be substantially completed similar to" another model house referred to in the contract, the memorandum in reference to the cellar being in a separate writing, the Appellate Division very recently permitted the evidence objected to as violating the standards set forth in *Naumberg v. Young, supra,* saying:

"The necessary elements of a valid contractual compromise are the *bona fides* of the dispute and conciliation and the reality, not the unknown and undetermined substantiality of the claim. \* \* \* The core of a contract is the agglutinated intentions of the parties thereto." *Meola v. Gorga,* 27 *N. J. Super.* 390 (*App. Div.* 1953).

A court may justifiably exhibit considerable reluctance in applying a legal doctrine if it is apparent by so doing essential justice may be infringed upon. The whole purport of the law is, in fact, to the contrary.

Here the thought uppermost in the minds of the purchasers was a dry basement. They were not backward in expressing it. So determined were they to secure it, they threatened to abandon the whole deal unless it were specifically provided for by a written instrument so there could be no misunderstanding in reference to it.

Nor is it now disputed. The facts are conceded, the "guarantee" is admitted, but the seller seeks to invoke a legal theory which, if it prevails, relegates primary justice to a secondary berth and nullifies the unequivocal and clearly expressed intent of the parties involved.

The writing alone is not "wholly and intrinsically self-determinative of the parties' intent to make it the sole memorial." The intent is ascertained from "the conduct and language of the parties and the surrounding circumstances." *Atlantic Northern Airlines, Inc., v. Schwimmer, supra.* Judged by these standards, we see no error in the admission of Exhibits P–3 and P–4.

The "guarantee," it is said, was *nudum pactum.* We think not. The record bespeaks ample consideration. The purchasers refused to sign the original contract or be committed thereby unless the "guarantee" were given and signed.

The consideration for it, therefore, was the execution of the contract to buy and the acceptance of the deed for the property in question. See *Thermoid Co. v. Consolidated Products, Inc.*, 7 N. J. 283 (1951).

P–4 had no "subsisting validity or evidential force by reason of the applicability of the doctrine of merger," argues the appellant, but merger, if there were one, would depend on the intention of the parties, and on this issue we have already expressed ourselves.

Nor do we find merit in the suggestion that P–3 fails to identify sufficiently the parties and the premises in question and thereby violates the Statute of Frauds. This defense appears neither in the pleadings nor in the pretrial order and we doubt if it has a place in the appeal, but assuming it has, consideration indicates it possesses little merit.

■ P–1, an advertising circular, was admitted in evidence subject to being "connected up." The respondents frankly admit they inadvertently failed to comply with this proviso. The exhibit contained pictures and sketches of the type of homes sold by the appellant, with printed matter relative to the construction, location, purchase price, financing of the building projects, etc. It was offered as illustrative of the type of home sold to the respondents, and we have difficulty in perceiving in what way it was prejudicial to the appellant.

■ We come to a like determination in reference to the photographs admitted for the purpose of showing water in the cellar, and we are satisfied that the appellant was not unduly limited in the cross-examination pressed as a ground for reversal.

As to the error alleged in the charge because inconsistent views were included, we would not subscribe to it as a model to be employed for clarity. The inconsistencies, however, fade when the time element referred to is considered, and we do not think it confusing to a point requiring a new trial.

The fundamental factual issue in the cause seems not even to be disputed, the main question being one of law,

and we think the jury was fully cognizant and accurately aware of the collateral questions submitted to it for decision.

Objection is made to the court's permitting one Moore to testify as an expert over the appellant's objection. He was a graduate architect, the holder of an engineering degree, a consulting engineer for twenty years, and an architectural designer in the field of land rehabilitation and building construction for a long period of time. His qualifications were for the court's determination in the exercise of its discretion and we see no clear showing of error as required by *Rempfer v. Deerfield Packing Corp.*, 4 *N. J.* 135 (1950).

It is next said that the respondents' contractor was not an expert and should not have been permitted to testify as to the value of his labor and the material he furnished in carrying out Moore's recommendations.

He seems to have possessed special knowledge and to have had long experience in this particular endeavor. He was in the construction business for 46 years and most of his experience was in the drainage field. He was fully competent to testify as to the value of his services and the materials furnished by him. See *DePonte v. Mutual Contracting Co.*, 18 *N. J. Super.* 142 (*App. Div.* 1952); *Maisto v. Maisto,* 123 *N. J. L.* 401 (*Sup. Ct.* 1939), affirmed 124 *N. J. L.* 565 (*E. & A.* 1940).

Lastly, it is said there was misconduct on the part of a juror who was seen talking to the expert witness sometime during the trial. The matter was called to the court's attention by a motion to disqualify the juror, whereupon the court conducted a complete investigation, going fully into the facts and circumstances of the incident and what took place. Counsel for the appellant was fully cognizant of the inquiry made and every development as it occurred. At the conclusion of the court's examination of the witnesses, instead of moving for a mistrial, the record indicates he was satisfied that the juror would be "fair and impartial," while the court thought the juror was "more high class" than the average. Counsel was content to permit the trial to proceed, but it is now suggested it was error for the court to have

permitted the juror to remain when the matter was brought to its attention.

The fundamental right of trial by a fair and impartial jury should always jealously be guarded by the court, but when an irregularity occurs and an inquiry is made and the explanation is apparently satisfactory to both court and counsel, who, impliedly at least, consent to a continuation of the trial, there is no act of the court constituting reversible error.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.