**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5565-18T3

CHRISTOPHER D. CURIALE
and JEROME C. CURIALE, on
behalf of themselves and others
similarly situated,

      Plaintiffs-Respondents,

v.

HYUNDAI CAPITAL
AMERICA INC.,

      Defendant-Appellant.

_____

Argued February 25, 2020 – Decided April 27, 2020

Before Judges Yannotti and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2834-18.

Todd S. Kim (Reed Smith LLP) of the District of Columbia bar, admitted pro hac vice, argued the cause for appellant (Reed Smith LLP, attorneys; John O. Lukanski, of counsel; David G. Murphy and Todd S. Kim, of counsel and on the briefs).

Andrew R. Wolf argued the cause for respondents (The Wolf Law Firm, LLC, and The Law Offices of Christopher J. McGinn, attorneys; Andrew R. Wolf, on the brief).

PER CURIAM

Defendant Hyundai Capital America Inc. (HCA) appeals from an April 18, 2019 order denying its motion to compel arbitration[1] and a July 12, 2019 order denying reconsideration. We reverse.

In July 2014, plaintiffs leased a Kia Forte from Freehold Kia. Plaintiffs and a representative of Freehold Kia executed several documents, including a lease agreement, a motor vehicle retail order (MVRO), and a gap waiver addendum.

Section 1, "Parties and Agreement to Lease," of the lease agreement states:

> In this Lease, "you" and "your" mean the lessee. "We," "us" and "our" mean the original lessor and the party to whom the original lessor intends to assign the Lease. These terms, conditions and disclosures govern your lease with us and after assignment, with the party to whom we have assigned the Lease ("the Assignee").

Directly above plaintiffs' signatures was the following provision: "YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND READ A

---

[1] The court granted plaintiffs' motion for discovery on the same date.

A-5565-18T3

COMPLETED COPY OF THIS LEASE BEFORE SIGNING IT."  Below plaintiffs' signatures is a section titled "<u>LESSOR'S ACCEPTANCE AND ASSIGNMENT</u>," which lists Freehold Kia as the assignor and Hyundai Lease Titling Trust (HLTT) as the assignee. (emphasis in original).[2]

Section 15 of the lease agreement, "<u>Other Terms and Conditions</u>," provides:

> <u>Assignment and Transfer of the Vehicle.</u>  You may not assign the lease or transfer the Vehicle without our prior written permission.  We may assign all of our rights under this Lease.  Any person to whom this Lease is assigned may reassign it.
>
>     . . . .
>
> <u>General.</u>  If any part of the Lease is invalid, unenforceable or illegal in any jurisdiction, the part that is invalid, unenforceable or illegal will not be effective as to that jurisdiction.  The rest of the Lease will be enforceable.  This Lease is our entire agreement.  We have made no promises to you not contained in this Lease.  Any change to this Lease must be written and signed by you and us.  If any part of this Lease is found by a court or other dispute resolution body to be void or unenforceable, this Lease is to be read as if that part were never contained in this Lease.

---

[2]  HLTT is a subsidiary of defendant.  Defendant's business involves acquiring by assignment long-term motor vehicle leases between dealerships and customers.  HLTT holds title as the legal owner of the leases and subject vehicles.  Defendant is the initial beneficiary of HLTT and beneficial owner of its assets.

> Lessor's Assignment.  Pursuant to the terms of that certain agreement between Lessor and the assignee named on the other side of this Lease ("Assignee") for the assignment of leases by Lessor to Assignee from time to time, Lessor hereby assigns all right, title and interest in the Lease and the Vehicle and rights the Lessor may have under any guaranty executed in connection with the Lease, with full powers to Assignee to collect and discharge all obligations, any guaranty and this assignment.
>
> [(Emphasis in original).]

Under the gap waiver addendum, the lease agreement was assigned to HLTT:

> This Lease Gap Waiver Addendum ("Addendum") is entered into between the undersigned lessee(s) (referred to as "Lessee(s)" "you" or "your") and Hyundai Lease Titling Trust (referred to below as "Assignee" "we" or "us").
>
> . . . .
>
> Dealer intends to assign all of its right, title and interest in the Lease and the Vehicle to Assignee.
>
> [(Emphasis in original).]

In signing the gap waiver addendum, plaintiffs acknowledged they agreed to the terms and conditions of the addendum, they received a copy of the completed addendum and that the addendum was attached to the contract.

The heading of the MVRO stated "LEASE." The body of the MVRO referred to payment terms and rebate conditions specifically for a leased vehicle, using the following language: "IF A LEASE, THE FOLLOWING APPLY," and "SEE LEASE CONTRACT FOR DETAILS." The customer was further instructed, in capital letters, that a complete disclosure of all lease terms and conditions was in the separate lease contract.

The MVRO also contained an agreement to arbitrate claims, which stated in pertinent part:

> AGREEMENT TO ARBITRATE ANY CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION.
>
> The parties to this agreement agree to arbitrate any claim, dispute, or controversy, including all statutory claims and any state or federal claims, that may arise out of or relating to the sale or lease identified in this agreement. By agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes. . . . The parties also agree to waive any right (i) to pursue any claims arising under this agreement including statutory, state or federal claims, as a class action arbitration, or (ii) to have an arbitration under this agreement consolidated with any other arbitration or proceeding. . . . THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION.

5

PLEASE READ IT CAREFULLY, PRIOR TO SIGNING.

[(Emphasis in original).]

After plaintiffs defaulted on the lease payments, the vehicle was repossessed. The following day, plaintiffs reinstated the lease after paying HCA a $1235.39 fee, which included a $370 charge for the repossession and storage of the car. Several days later, plaintiffs reclaimed the car after signing a redemption release and paying a $375 reinstatement/redemption fee to the repossession company.

Days later, plaintiffs returned the vehicle just prior to the lease end date. When the lease expired, Kia Motors Finance sent plaintiffs a condition report and an invoice for $250 for excessive wear and tear on the vehicle. Plaintiffs retained counsel who advised Kia that plaintiffs intended to obtain an independent appraisal of the damage. Shortly thereafter, Kia sent plaintiffs a second invoice for $742.80, including the $250 excessive wear and tear fee, a $370 charge for repossession and storage expenses, and a disposition fee.

Plaintiffs filed a class action complaint against defendant on behalf of a class of similarly situated lessees and purchasers. In an amended complaint, they alleged various claims on behalf of the putative class for violations of the

A-5565-18T3

New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -214, and the Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14 to -18.

These claims alleged defendant engaged in deceptive and unlawful business practices for charging fees not permitted by contract, including a fraudulent title fee, a fee related to the recovery of a repossessed vehicle, and a duplicative repossession fee. Plaintiffs sought the certification of three separate classes. They also alleged individual, non-class claims for CFA violations related to the fee for excessive wear and tear on the vehicle.

After plaintiffs filed a motion to compel defendant to provide written discovery, defendant moved to compel arbitration and stay the action. In opposition to defendant's motion, plaintiffs contended they contracted with Freehold Kia, not its parent company, HCA, and therefore the arbitration clause in the MVRO was not enforceable. They asserted HCA was only a party to the lease agreement.

After argument on the motions, the judge issued an oral decision on April 18, 2019, denying the motion to compel arbitration and granting plaintiffs' motion for discovery.

In her ruling, the judge rejected plaintiffs' argument that there was no mutual assent and that defendant lacked authority to enforce the arbitration

agreement. The judge found a valid assignation from Freehold Kia to defendant. She referenced the gap waiver addendum which stated the intent of Freehold Kia to assign its rights in the lease and the car to HCA. And the lease agreement that indicated it applied "to the party to whom the original lessor" – Freehold Kia – "intends to assign the lease," HCA.

The judge further determined the MVRO and lease agreement went "hand in hand" and should be read together as one instrument as they were part of the same transaction. She stated, "[i]f [HCA] can be liable because of the assignment, they should be able to enforce the agreements." Therefore, the judge found HLTT, and HCA, as its initial beneficiary and owner of its assets, had standing to enforce the arbitration agreement.

However, in turning to the language of the arbitration clause itself, the judge concluded it was ambiguous; the language did not give plaintiffs notice they were waiving their right to bring a class action lawsuit in court. The judge acknowledged that the parties had not raised this issue in their briefs or during oral argument. In fact, during oral argument, the judge inquired of plaintiffs' counsel whether he agreed with defendant's premise that plaintiffs were not disputing the validity of the agreement. Counsel replied: "But yes, the primacy of our argument . . . relates to the facts that the defendant is not a party to the

buyer's order. That the buyer's order was not assigned. And that the arbitration agreement is not enforceable."

Defendant's motion to compel arbitration was denied. A subsequent motion for reconsideration was denied on July 12, 2019. The judge stated, "[t]he parties . . . agree[d] to waive any . . . claims arising under this agreement," but the clause was "ambiguous in the sense that it didn't . . . refer to any class action claim. It only referred to a class action arbitration." The court further reasoned the clause "could lead the reasonable consumer to believe that a class action litigation was not out of the question."

On appeal, HCA argues the trial court erred by failing to enforce the arbitration provision in the parties' agreement. HCA contends that a valid arbitration agreement exists between the parties because, taken as a whole, the agreement is not ambiguous.

We apply a de novo standard of review when reviewing a trial court's determination of the enforceability of a contract. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). When reviewing arbitration clauses within contracts, "[t]he enforceability of arbitration provisions is a question of law; therefore, it is one

to which we need not give deference to the analysis by the trial court . . . ." Ibid. (citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)).

We begin by recognizing the Federal and New Jersey Arbitration Acts express a general policy favoring arbitration. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (2014); see also 9 U.S.C. §§ 1 to 16; N.J.S.A. 2A:23B-1 to -32. An arbitration agreement is governed by principles of contract law. In Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301 (2019), our Supreme Court stated:

> In this state, when called on to enforce an arbitration agreement, a court's initial inquiry must be – just as it is for any other contract – whether the agreement to arbitrate all, or any portion, of a dispute is "the product of mutual assent, as determined under customary principles of contract law."
>
> [Id. at 319 (quoting Atalese, 219 N.J. at 442).]

In Atalese, our Supreme Court stated "because arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" 219 N.J. at 442-43 (citation omitted). Consequently, when a contract contains a waiver of a right to pursue a statutory remedy in court, that waiver "must be clearly and

unmistakably established."   Id. at 444 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)).

As with other contractual provisions, courts look to the plain language the parties used in the arbitration provision.  Garfinkel, 168 N.J. at 135; see also Kernahan, 236 N.J. at 321 (citations omitted) ("A basic tenet of contract interpretation is that contract terms should be given their plain and ordinary meaning."); Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (citation omitted) (holding courts must determine the parties' intentions when construing the language of the arbitration clause).

Applying these principles, we are constrained to find the motion judge erred in holding the arbitration clause at issue here was ambiguous and unenforceable.  The introduction to the clause reads: "AGREEMENT TO ARBITRATE ANY CLAIMS. READ THE FOLLOWING ARBITRATION PROVISIONS CAREFULLY, IT LIMITS YOUR RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION."

At the conclusion of the clause, the language is repeated: "THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION. PLEASE READ IT CAREFULLY, PRIOR TO SIGNING."

The clause states unequivocally that the parties agree "to arbitrate any claim, dispute, or controversy, including all statutory claims . . . that may arise out of or relating to the sale or lease identified in this agreement." The language is clear in stating: "By agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action . . . ."

The clause continues, stating the parties agree to waive their rights to bring claims arising under the agreement "as a class action arbitration," or to have an arbitration under the agreement "consolidated with any other arbitration or proceeding." In its plain language, the clause, as a whole, clearly and unmistakably states the parties, by agreeing to arbitration, are waiving their rights to bring any claims in court.

Contrary to the motion judge's determination, there is no contradiction or confusion caused by the broad waiver of court actions for all claims arising under the agreement and the specific waiver of the right to class action arbitration. The waiver of the right to maintain a "class action arbitration" only applies to the arbitration process. A party's action must be arbitrated individually.

There is no ambiguity, that under the clause, plaintiffs waived their rights to bring any claims that arose under the agreement, including class actions, in court and waived their rights to pursue a class action in arbitration. We are satisfied the clause was "stated with sufficient clarity and consistency to be reasonably understood" by plaintiffs that they were waiving their right to pursue relief in court and that all claims relating to the lease would be decided by an arbitrator. NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 428 (App. Div. 2011).

In light of our determination that the arbitration clause was not ambiguous and therefore the case must proceed to arbitration, we address plaintiffs' argument that the motion judge erred in finding there was a valid assignment from Freehold Kia to HCA.

Plaintiffs contend the MVRO and lease agreement were separately executed documents and therefore the arbitration agreement does not apply to the lease. In addition, HCA was not a party to the lease or MVRO. We are not persuaded by these arguments.

"[W]here [an] agreement is evidenced by more than one writing, all of them are to be read together and construed as one contract, and all the writings executed at the same time and relating to the same subject-matter are admissible

in evidence." Lawrence v. Tandy & Allen, Inc., 14 N.J. 1, 7 (1953) (quoting Gould v. Magnolia Metal Co., 69 N.E. 896, 898 (Ill. 1904)). Where several writings constitute one instrument, "the recitals in one may be explained, amplified or limited by reference to the other . . . ." Schlossman's, Inc. v. Radcliffe, 3 N.J. 430, 435 (1950). One instrument may be found "where the parties have expressed their intention to have one document's provision read into a separate document." Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 533 (App. Div. 2009) (quoting 4 Williston on Contracts § 30:25 (Lord ed. 1999)). A non-signatory can become a party to an arbitration agreement through assignment. See Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 237 (App. Div. 2008).

Here, the MVRO and the lease agreement were executed at the same time and related to the same transaction: plaintiffs' lease of the vehicle. The arbitration agreement in the MVRO stated that "[t]he parties to this agreement agree to arbitrate any claim, dispute, or controversy . . . that may arise out of or relating to the sale or lease identified in this agreement." The arbitration clause refers to the lease agreement. The heading of the MVRO is "Lease," and the lease agreement is referenced throughout the MVRO. The lease agreement is therefore incorporated by reference into the MVRO.

Moreover, the first paragraph of the lease agreement advised of Freehold Kia's intent to assign the lease. Plaintiffs' signature on the lease evidenced their written consent for assignment of the lease to HLTT. HCA is the initial beneficiary and owner of HLTT's assets. Finally, that same day, plaintiffs signed the gap waiver addendum that also provided for the assignment of all of Freehold Kia's rights, title and interest in the lease and the vehicle to HLTT. The documents signed by plaintiffs constitute a single, integrated contract.

Reversed and remanded to the trial court for entry of an order dismissing plaintiffs' complaint without prejudice, and compelling plaintiffs to arbitrate their claims against HCA individually and not as part of a class action. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5565-18T3