**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3281-18T2

KAMMERMAN'S MARINE,
INC.,

      Appellant,

v.

NEW JERSEY ECONOMIC
DEVELOPMENT AUTHORITY
and NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION,

      Respondents.

_____

Submitted April 27, 2020 – Decided October 2, 2020

Before Judges Messano and Ostrer.

On appeal from the New Jersey Economic Development Authority.

Lieberman & Blecher, PC, attorneys for appellant (Stuart J. Lieberman, of counsel and on the briefs; Daniel E. Hewitt and Kacy C. Manahan, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondents (Donna Arons, Assistant Attorney

General, of counsel; Matthew Reagan, Deputy Attorney
General, on the briefs).

The opinion of the court was delivered by

OSTRER, J.A.D.

Marina operator Kammerman's Marine, Inc. (Marine) appeals from the final agency decision of the New Jersey Economic Development Authority (EDA) requiring that it repay a conditional hardship grant it received under the Underground Storage Tank Finance Act, N.J.S.A. 58:10A-37.1 to -37.23 (Act), to remediate leaking underground storage tanks. "Upon the sale of [the] facility" for which a grant was made, the Act requires repayment according to a sliding scale. N.J.S.A. 58:10A-37.10(b), -37.16(c). A "facility" means the underground tanks. N.J.S.A. 58:10A-37.2. If the sale occurs after two years of operation, seventy-five percent of the grant must be repaid; if after three years, fifty percent; if after four years, twenty-five percent; and if the sale occurs after five years, the grant is forgiven. The EDA's grant agreement with Marine likewise states that "upon the sale of the Project Site and/or the Underground Storage Tanks," the grant must be repaid, according to the sliding scale provision. Relying on the Act and the agreement, the EDA required repayment of a $58,500 grant, minus a twenty-five percent discount, because it found that the property

2

where Marine operates, and where the assisted remediation would occur, was sold less than three years after the grant issued.

Marine presents four arguments to avoid repayment. It contends that, although it received the grant, it is merely a tenant and marina operator on real property others owned; and even if the real property was sold, Marine was not. Therefore, it was not obliged to repay. Alternatively, Marine argues that the transfer of title to the real property was not a sale, but a transfer without consideration, which did not trigger repayment. Marine also invokes another provision of the Act, which it contends shields it from repayment because it continued to operate as it had when it received the grant. Finally, Marine contends that requiring repayment violates the Act's legislative purpose.

We find none of these arguments persuasive. We are not bound by the EDA's interpretation of the Act. See Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). And a contract's meaning is a legal matter for our de novo review. Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). Although we depart in some respects from the agency's reasoning, see State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (stating we may affirm for reasons other than those relied on by the court below in the decision on appeal), we discern no error in the EDA's demand for repayment pursuant to the Act and agreement. And,

ample evidence supported the EDA's conclusion that the Project Site or Facility was sold, see Brady v. Bd. of Review, 152 N.J. 197, 211 (1997) (stating courts are obliged to accept an agency's factual finding supported by substantial evidence).

We begin with Marine's contentions that its repayment obligation does not apply, because it is merely an operator and tenant, and the property was not sold.

The sparse record before us certainly indicates that Marine was never the title owner of the property where the assisted remediation was to occur. However, in applying for the grant, Christian Kammerman listed himself and Marine — a New Jersey corporation that he and Misty Kammerman equally own — as both the "proposed owner of the project" and the "present owner of the Project Site." The "Project Site" was said to be located at Block 566, Lot 10 in Atlantic City. The subsequent grant agreement refers to Marine's application for financial assistance to remove leaking underground storage tanks at the "Project Site," and requires grant repayment upon sale of the "Project Site."

Reasonably interpreted, the term "Project Site" means the real property where the tanks to be remediated are located. The grant agreement expressly states that Marine "is, as of the date hereof, the owner of the Project Site." It does not identify Marine as a mere tenant or operator. Marine does not explain

how as tenant, it could "own" the Project Site. The application and agreement should be read together. Lawrence v. Tandy & Allen, Inc., 14 N.J. 1, 6 (1953) (stating that "where several writings are made as part of one transaction relating to the same subject matter, they may be read together"). Having represented it owned the Project Site, and received a grant based on that representation, Marine is estopped from now denying ownership to avoid repayment upon the site's sale. See Knorr v. Smeal, 178 N.J. 169, 178 (2003) (setting forth elements of equitable estoppel, which is "designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to [its] detriment").

Second, regardless of Marine's status as tenant or operator, the Act and the grant agreement plainly require repayment upon sale of the Project Site or the Facility, that is, the tanks. The record also clearly indicates that both were sold. The Project Site is located at Block 566, Lot 10. The Facility consists of the tanks. Both the Project Site and the Facility changed hands. In fact, two sales occurred after the EDA entered the grant agreement in 2014. In July 2017, Misty Kammerman transferred her fifty-percent interest in Block 566, Lots 10, 11.01 and 13 to Christian Kammerman for $130,400. As noted, Marine's

5

application designated Lot 10 as the Project Site's location.[1]  Shortly thereafter, Christian Kammerman transferred the three lots to a limited liability company, Kamms Properties, which he and his wife, Stacey Kammerman, own.  Although the deed reflecting that transfer recited consideration of only $10, Christian Kammerman executed a Seller's Residency Certification/Exemption and an Affidavit of Consideration for Use by Seller, in which he acknowledged he received consideration of $30,400 for the transfer — which was the balance of the existing mortgage on the property.  Therefore, we need not address Marine's argument that an intra-family transfer for nominal consideration does not trigger repayment.  Cf. State v. Weissman, 73 N.J. Super. 274, 281 (App. Div. 1962) (stating that "[t]he broad aspect of the term 'sale' signifies the transfer of property from one person to another for a consideration of value," but

---

[1]  On appeal, Marine contends that the property was jointly owned by Christian, Misty, Desiree and Leslie C. Kammerman when the grant was issued in 2014. That is belied by the record.  The 2017 deed recites that in 2013, Desiree and Leslie C. Kammerman transferred their respective twenty-five-percent interests to Christian and Misty Kammerman.  The four Kammermans jointly received title to the properties by deeds from another Kammerman family-member's trust and estate in 2006 and 2008.  For reasons that are not apparent, Marine evidently submitted to the EDA as part of its 2014 grant application a copy of one of the 2006 deeds, which transferred a partial interest in Lot 13 (not Lot 10).  In its responding brief, the EDA also mistakenly relies on that 2006 deed in support of the erroneous statement that the four Kammermans owned the property when the grant issued.

acknowledging that the term may have broader or narrower meaning).  Misty Kammerman received more than nominal consideration to transfer her fifty-percent share of the property to Christian Kammerman, and Christian Kammerman received more than nominal consideration to transfer his sole ownership of the property to the LLC.

We also reject Marine's argument that it is not obliged to repay the grant because it has continued to operate its marina.  Marine misinterprets N.J.S.A. 58:10A-37.16, which entitles the EDA to a lien on the real property where the tanks to be remediated are located.  The lien shall be removed upon repayment of a grant.  N.J.S.A. 58:10A-37.16(c).  However, as we have noted, the section gradually reduces the repayment amount over five years, provided the grantee continues to operate "in substantially the same manner" as it did when it received the grant.  Ibid.  If it ceases to operate in substantially the same manner, "the five-year period to satisfy the lien shall be tolled."  Ibid.  Contrary to Marine's contention, the provision does not condition repayment on the failure to operate in the same manner.  Rather, it simply suspends the reduction in the repayment amount, unless and until the grantee resumes prior operations.  Sale of the Facility triggers repayment.  N.J.S.A. 58:10A-37.10(b).

Lastly, we reject Marine's contention that requiring it to repay the grant violates the Legislature's intent. The statute clearly requires grant repayment "[u]pon the sale of a facility" — that is, the tanks — "for which a conditional hardship grant was made . . . ." N.J.S.A. 58:10A-37.10. We assume the underground tanks are fixtures that transfer with the land. Marine provides no evidence to the contrary. When a statute's plain language is clear, our interpretative task is complete. In re Kollman, 210 N.J. 557, 568 (2012). The Legislature expressly included only two exceptions to the general rule that the sale of the facility requires immediate repayment of the grant: if the sale were made pursuant to a condemnation proceeding or in the exercise of eminent domain. N.J.S.A. 58:10A-37.10(b). Neither is present here. We will "not write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment." Craster v. Bd. of Comm'rs of City of Newark, 9 N.J. 225, 230 (1952).

In any event, we are unpersuaded that requiring repayment is so contrary to the general purpose of the statute that a literal reading should be avoided. The statute provides a generous benefit to certain owners of leaking underground tanks. So long as they retain the property and operate it in substantially the same manner for five years, the grant is forgiven, and the property owner enjoys the

8

increased value from remediating the tank. The repayment obligation upon sale assures that the EDA receive, as part of the sale proceeds, the return of its "investment" in the polluted property. Absent repayment, the seller would enjoy the full benefit of the grant. We acknowledge uncertainty about whether the statute requires repayment upon transfers for nominal or no consideration. However, that is not the case here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3281-18T2