**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2199-23

REIMAGINED MIND COUNSELING
AND CONSULTATION, LLC,

    Plaintiff-Appellant,

v.

JERSEY CIY SCHOOL DISTRICT and
INTEGRATED CARE CONCEPTS &
CONSULTATION, LLC,

    Defendants-Respondents,

and

ROBERT J. PRUCHNIK,

    Defendant.

_____

Submitted November 18, 2025 – Decided December 8, 2025

Before Judges Sumners, Chase and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1415-22.

Jalloh & Jalloh LLC, attorneys for appellant (Abdul J. Roberts, on the briefs).

Adams Lattiboudere Croot & Herman, LLC, attorneys for respondent Jersey City School District (Kelly Samuels Thomas, of counsel and on the brief).

PER CURIAM

Plaintiff Reimagined Mind Counseling and Consultation, LLC, appeals from three Law Division orders: a December 21, 2023 order granting defendant Jersey City School District's ("JCSD") motion to strike plaintiff's amendment to discovery; a January 8, 2024 order granting JCSD's motion for summary judgment; and a January 8, 2024 order denying plaintiff's cross-motion for summary judgment. We affirm.

I.

Plaintiff is a for-profit company formed in May 2021, by CEO Maria Clemente, to provide therapy services to clients. In August 2021, plaintiff responded to a Request for Proposals ("RFP") from defendant seeking mental health counseling services for students returning to JCSD's forty public schools after the Covid 19 pandemic.

Paragraph 13 of the RFP required that "pursuant to N.J.S.A. 18A:6-7.1, providers for the services of this contract shall submit to the school district, prior to commencement of contract, evidence or proof that each employee assigned to provide services and that comes in regular contact with students, has had a

criminal history background check."  Additionally, it provided that "[f]ailure to provide a proof of criminal history background check for any employee coming in regular contact with students, prior to commencement of contact, may be cause for breach of contract."  Paragraph 13 was repeated in the RFP's "ASSURANCE OF COMPLIANCE" section, which bidders were required to sign and return with their proposal.

In addition, Paragraph 39 of the RFP, "TERMINATION OF CONTRACT," stated that:

> [i]f the [JCSD] determines that the contractor has failed to comply with the terms and conditions of the proposal upon which the issuance of the contract is based or that the contractor has failed to perform said service, duties and or responsibilities in a timely, proper, professional and/or efficient manner, then the [JCSD] shall have the authority to terminate the contract upon written notice setting forth the reason for termination and effective date of termination.

The RFP also required bidders to submit documentation that "[a]ll professional staff assigned to provide counselling services, shall be in possession of all appropriate and current certificates of eligibility as well as New Jersey Licenses, as awarded by a New Jersey State agency (DOE, DHS, etc.), charged with such responsibility, or professional licensing entities, as appropriate."

A-2199-23

On August 26, 2021, JCSD and plaintiff entered into a contract for a term beginning on September 1, 2021 and ending on June 30, 2022, with an option to renew by JCSD. The RFP was incorporated into the contract.

With regard to payment processing, the contract provided in Paragraph 5 of Part B:

> Process for Payment. The Contractor will bill the [JCSD] by monthly duly verified invoices. The invoices shall seek payment only for actual services rendered. The [JCSD] will pay all invoices from the Contractor within 30 days of receipt and verification of a properly completed invoice and supportive documentation.

Paragraph 8 of Part B stated:

> Representations of the Contractor. The CONTRACTOR represents that it possesses all licenses, certifications, registrations, and/or any other approvals required by law as a provider of the above services and shall maintain them throughout the term of this Contract and any extensions thereto.

Paragraph 12 of Part B required plaintiff to comply with the requirements of N.J.S.A. 18A:6-7.1 regarding criminal history record checks for any and all officers and employees with direct contact with children prior to commencement of the Services.

And Paragraph 24, of Part B stated:

4

A. <u>Termination for Cause</u>. If either party fails to comply with any of the obligations required of it in this contract, written notice specifying the failure must be provided to the breaching party. If the party fails to remedy and cure such failure within thirty (30) days, then the non-breaching party will have the right to terminate the contract immediately upon giving an additional thirty (30) days prior written notice of that intention.

B. <u>Termination for Convenience</u>. The [JCSD] may terminate this Agreement at any time upon giving thirty (30) days' prior written notice to the CONTRACTOR.

On September 13, 2021, plaintiff submitted an invoice for payment for services to be provided in its "ramp up" training period for the month of September and was paid by JCSD two weeks later.

On October 7, 2021, plaintiff submitted an invoice for payment for its anticipated costs for October, and was informed by Robert J. Pruchnik, JCSD's general counsel, that the invoice was premature as it did not reflect services actually rendered, as required by the contract. JCSD did not pay that invoice.

Later that month, Pruchnik outlined a number of areas of concern related to plaintiff's billing practices, including: (1) billing in September for amounts unrelated to direct student counseling services; (2) billing in early October for matters unrelated to direct student counseling; and (3) billing in October for dates on which JCSD's schools were closed. Pruchnik also referenced the

5

contract's requirements that invoices had to be properly documented by vouchers and timesheets, verified by school principals or administrators—not electronically by Clemente—and that JCSD would only pay "for actual services rendered." Additionally, Pruchnik renewed JCSD's request that plaintiff submit documentation evidencing both its employees' New Jersey professional licenses and the results of their criminal history background checks.

In early November, plaintiff responded to JCSD's billing issues and requests for background checks and licenses; and then submitted a revised invoice for the month of October. Clemente confirmed that plaintiff's clinicians had school principals sign off on their timesheets when possible, and that plaintiff used a geotagging system to track clinicians' time at the schools. She also believed that performing a criminal background check through one of plaintiff's vendors was adequate to fulfill both N.J.S.A. 18A:6-7.1 and the contractual requirements of criminal background checks. Nevertheless, she proposed allowing her team to work remotely with students until the clinicians could get fingerprinted and submit to background checks, which could not be completed until the end of the month at the earliest.

Meanwhile, at a meeting on November 9, 2021, attended by Clemente, Pruchnik, and others, Pruchnik stated that the criminal background information

submitted by plaintiff did not comply with the contract's requirements, and that plaintiff's clinicians would not be permitted to enter school buildings until they satisfied legally required fingerprinting for background checks. Pruchnik also "made clear" that criminal background checks had to be conducted by the New Jersey Department of Education's criminal history review unit. In addition, they discussed the revised invoice and Pruchnik raised issues with plaintiff's billing practices, stating that plaintiff would need to submit another new invoice.

On November 19, 2021, Pruchnik sent a letter to Clemente via email noting that plaintiff's revised October invoice would not be paid because, among other things, it exceeded the original amount by over $41,000, its related timesheets were not verified and signed by the school principals or administrators, and it failed to document actual direct services. The invoice also requested payment for counseling on days the schools were closed and for days when various groups of plaintiff's employees were not at work. In addition, Pruchnik stated that "the revised October invoice includes time sheets for 3 clinicians who are not licensed by the State of New Jersey . . . [,] 1 clinician with an out-of-state license . . . [,] and 2 clinicians with other licenses issued by the State of New Jersey." Finally, Pruchnik stated that "in light of the foregoing, [plaintiff]'s request for payment of its revised October, 2021 invoice cannot be

7

granted and may result in the [JCSD's] decision to terminate its contract with [plaintiff]."

Twenty-four minutes later, Pruchnik emailed Clemente a second letter informing her that the Jesey City Board of Education had voted to terminate the contract effective on December 17, 2021.

When Clemente formed plaintiff, she also worked for defendant Integrated Care Concepts & Consultation, LLC, a business that also counseled children. After termination of the JCSD contract, Pruchnik received two letters from Integrated's counsel informing him that Clemente had filed a wage dispute against Integrated and Integrated had counterclaimed that Clemente had misappropriated Integrated's services, intellectual property, programs, advertising and publications, and had hired Integrated's staff in a scheme to obtain JCSD's contract.

On April 29, 2022, plaintiff filed a six-count complaint against JCSD, Integrated, and Pruchnik seeking compensatory and punitive damages, injunctive relief, and fees and costs. It alleged breach of contract as to JCSD and Pruchnik (count one), interference with existing contract as to Pruchnik and Integrated (count two), conversion as to JCSD (count three), breach of implied covenant of good faith and fair dealing as to JCSD (count four), unjust

enrichment/quantum meruit pled in the alternative as to JCSD (count five), and fraud as to JCSD and Pruchnik (count six).

Integrated filed a motion to dismiss the complaint pursuant to <u>Rule</u> 4:6-2(e) for failure to state a claim upon which relief may be granted. JCSD and Pruchnik filed a motion to dismiss the complaint's second, third, fourth, and sixth counts in lieu of answer. The court denied the motions without prejudice after converting them to motions for summary judgment. Defendants refiled their motions.

Count two against Integrated was dismissed on September 23, 2022. On November 4, 2022, counts two and four against Pruchnik were dismissed with prejudice, and counts three and six were dismissed in their entirety with prejudice.[1] Thus, only the following causes of action remained: (1) breach of contract as to JCSD (count one); (2) breach of implied covenant of good faith and fair dealing as to JCSD (count four); and (3) unjust enrichment enrichment/quantum meruit pled in the alternative as to JCSD (count five).

After JCSD answered, it filed an unopposed motion to extend the original discovery end date ("DED") which was granted extending the DED to June 1,

---

[1] Plaintiff has not appealed these dismissals. As such, there are no remaining claims against Integrated and Pruchnik and they do not take part in this appeal.

2023. JCSD moved, unopposed, to extend the DED two more times but was denied for procedural reasons. The second order from July 7, 2023, stated that, "[a]ny further requests to extend discovery must be made by formal motion." Notwithstanding the court's July 7 order, JCSD and plaintiff orally agreed to continue the exchange of discovery beyond the court's set date.

In September 2023, the parties participated in court-mandated arbitration. R. 4:21A-1(a)(3). Rejecting the arbitrator's award, JCSD filed a request for a trial de novo and with the court's permission, filed an amended answer with counterclaims against plaintiff.

In October 2023, JCSD and plaintiff filed cross-motions for summary judgment. As part of its motion, plaintiff submitted a new certification, dated October 16, 2023, from JCSD's past president Gerald Lyons as well as various emails between Clemente and a JCSD employee. JCSD filed a motion to strike this evidence as a late-served discovery amendment pursuant to Rules 4:17, 4:18, and 4:24. On December 21, 2023, the court granted JCSD's motion to strike that evidence.

Meanwhile, on November 17, 2023, the court held oral argument on the summary judgment motions and denied them without prejudice. JCSD's motion was denied because its pleadings were deficient under Rule 4:46-2(a) and 4:46-

10

2(c) as its brief was devoid of citations to the record. The court also denied plaintiff's cross-motion without prejudice, finding "there are genuine issues of material fact [as to all claims], and therefore, [plaintiff] is not entitled to judgment as a matter of law."

JCSD refiled its motion for summary judgment on December 7, 2023, with a return date on January 5, 2024. On December 26, 2023, plaintiff refiled its cross-motion for summary judgment with a return date of January 5, 2024. Later, on December 26, 2023, the following clerk notice was entered into the court's case docket: "Dear Counsel: This Cross Motion was filed Dec 26, and therefore will not be considered Jan 5. And since the trial date is in Feb 2024, the cross motion will not be considered as its return date is not more than 30 days before trial."

On January 5, 2024, the court held oral argument on JCSD's summary judgment motion. In its oral opinion, the court explained that plaintiff's cross-motion did not specifically relate back to JCSD's summary judgment motion because plaintiff had included "a separate argument," and that consideration of this new argument would violate the time frame established by court rule for a summary judgment motion.

11

The court thereafter dismissed plaintiff's complaint with prejudice. It determined that plaintiff had breached the contract with JCSD by failing to provide a full set of clinicians licensed to practice in New Jersey before the start date for those services and by failing to comply with the fingerprinting requirements for criminal background checks of the clinicians.

On January 8, 2024, the court filed two separate memorializing orders: (1) denying without prejudice plaintiff's cross-motion for summary judgment; and (2) granting JCSD's summary judgment motion to dismiss plaintiff's complaint, but denying JCSD's motion for summary judgment on its counterclaims. Thus, the action remained open only as to JCSD's counterclaims of breach of contract and conversion against plaintiff. JCSD then voluntarily withdrew its counterclaims against plaintiff. On March 7, 2024, the court denied plaintiff's motion for relief after judgment.

This appeal follows.

II.

A.

We first address plaintiff's argument that the court abused its discretion by granting JCSD's motion to strike evidence submitted in support of its cross motion for summary judgment. We are not persuaded.

12

"We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (citations omitted). Accord C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 453 (2014); Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

A court abuses its discretion when its "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir.1985)). Accord Est. of Semprevivo ex rel. Semprevivo v. Lahham, 468 N.J. Super. 1, 11 (App. Div. 2021); Customers Bank v. Reitnour Inv. Props., LP, 453 N.J. Super. 338, 348 (App. Div. 2018). An abuse of discretion also occurs when "the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005).

Plaintiff never made a formal motion to extend the DED. Instead, when plaintiff filed its cross-motion for summary judgment, it submitted for support

13

a new seven-page certification dated October 16, 2023, from JCSD's past president Gerald Lyons and emails between Clemente and a member of the JCSD. Plaintiff did not even contemporaneously seek any permission to include Lyons's certification or the emails. Plaintiff did not follow the procedures of filing a formal motion that the court had set up to extend discovery. The court therefore denied the additional discovery. The court enforcing those procedures cannot be said to be an abuse of discretion.

Furthermore, the parties participated in court-mandated arbitration over a month before plaintiff submitted the additional documents. Rule 4:24-1(c) states: "No extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown." See also Bender v. Adelson, 187 N.J. 411, 426 (2006). The test to determine exceptional circumstances is found in Rivers, 378 N.J. Super. 68, 79 (App. Div. 2005), and it requires that the moving party must satisfy four inquiries:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

A-2199-23

[Ibid.]

Not only did plaintiff fail to file a motion, but plaintiff failed to address any of the Rivers factors with its submission. There are no exceptional circumstances alleged on the record from which to find an abuse of discretion.

B.

Next, plaintiff contends the court abused its discretion by refusing to hear its motions for reconsideration. Plaintiff alleges that it filed two timely motions for reconsideration, and the court made no decision on the merits in either motion. This argument is without merit.

Plaintiff has not provided any citation to the record of its motions for reconsideration and does not describe those motions in its merits brief or reply brief. Thus, it is difficult to know the motions plaintiff is referring to. It is not this court's responsibility to scour the trial record for facts to support an argument that a party has raised on appeal. Spinks v. Township of Clinton, 402 N.J. Super. 465, 474-75 (App. Div. 2008) (citing State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977)).

Nonetheless, plaintiff's counsel may be referring to letters he sent to the court on December 26, 2023, and January 2, 2024, seeking an emergent motion for reconsideration of the denial of its cross motion for summary judgment. The

15

court's case docket refers to these letters only as "correspondence" submitted by plaintiff's counsel, and the judge never filed any related order.

Rule 1:6-2(a) states in part:

> Generally. An application to the court for an order shall be by motion, or in special cases, by order to show cause. A motion, other than one made during a trial or hearing, shall be by notice of motion in writing unless the court permits it to be made orally. Every motion shall state the time and place when it is to be presented to the court, the grounds upon which it is made and the nature of the relief sought, and, as to motions filed in the Law Division-Civil Part only, the discovery end date or a statement that no such date has been assigned. The motion shall be accompanied by a proposed form of order in accordance with R. 3:1-4(a) or R. 4:42-1(a)(4) and (e), as applicable. The form of order shall note whether the motion was opposed or unopposed. If the motion or response thereto relies on facts not of record or not subject of judicial notice, it shall be supported by affidavit made in compliance with R. 1:6-6.

"Rule 1:6 shall apply to all trial courts," with exceptions not applicable here. R. 1:6-1. In fact, this rule is "designed to make clear the intended uniformity of the motion practice in all trial courts with the exception of the municipal courts and the Special Civil Part." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 1:6-1 (2025).

Turning to plaintiff's correspondence, plaintiff did not file a notice of motion, proposed order, or certificate of service, as required by Rule 1:6-2. "An

16

application to the court for an order shall be by motion," R. 1:6-2(a), not simply letters of correspondence. Indeed, the letters fail to meet the requirements governing motion practice in at least two other respects. First, a motion "shall state the time and place when it is to be presented to the court," ibid., thereby alerting the other parties to the return date or other deadline by which they could respond. Second, if the motion "relies on facts not of record or not subject of judicial notice, it shall be supported by affidavit," and not by an attorney's own unsworn assertions in a letter.

In Mazur v. Crane's Mill Nursing Home, 441 N.J. Super. 168, 179 (App. Div. 2015), this court stated that parties filing motions "must meet the procedural requirements concerning general motion practice, which are contained in Rule 1:6." Because plaintiff did not follow mandated motion practice, the court did not abuse its discretion by failing to consider plaintiff's submissions as motions for disposition.

Further, because the court made no corresponding orders, this court cannot review whether the judge actually abused his discretion by denying reconsideration. See Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (We review a trial court's decision on a motion for reconsideration under an abuse of discretion standard).

17

C.

Plaintiff also asserts the court abused its discretion by refusing to hear its cross-motion for summary judgment. We disagree.

Rule 1:6-3(b) states in pertinent that

> [a] cross-motion may be filed and served by the responding party together with that party's opposition to the motion and noticed for the same return date <u>only if it relates to the subject matter of the original motion . . . . A cross-motion relating to the subject matter of the original motion shall, if timely filed pursuant to this rule, relate back to the date of the filing of the original motion.</u>
>
> [(Emphasis added).]

More importantly, Rule 4:46-1 states in part: "All motions for summary judgment shall be returnable no later than 30 days before the scheduled trial date, unless the court otherwise orders for good cause shown."

Plaintiff filed its cross motion on December 26, 2023, and the trial date was scheduled for February 13, 2024. Plaintiff merely asserts in its brief that its motion related back to the subject matter of JCSD's summary judgment motion because it was the same cross motion that had been previously filed and rejected, with minor adjustments to address the court's concerns. Plaintiff does not present any further explanation, argument or citation to the record. A party has the responsibility to make supporting legal arguments with references to the

18

record.  Hild, 148 N.J. Super. at 296; see also Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 45 (App. Div. 2003) ("Where an issue is based on mere conclusory statements by the brief writer, we will not consider it.").

As noted, JCSD filed its summary judgment motion on December 7, 2023, with a return date of January 5, 2024.  On December 26, 2023, plaintiff filed its cross-motion for summary judgment.  However, the court refused to hear the cross motion because the return date of the cross motion was "not more than 30 days before trial."  Moreover, the court explained that plaintiff's cross-motion did not specifically relate back to the filing of JCSD's second summary judgment motion because plaintiff had included "a separate argument" distinct from those delineated by JCSD in its motion.  There was no abuse of discretion.

## III.

We now address plaintiff's contention that the court erred as a matter of law in granting defendants' summary judgment motion.  We review summary judgment motions de novo, applying the same standard as the trial judge. Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024) (quoting Qian v. Toll Bros., Inc., 223 N.J. 124, 134-35 (2015)).  Summary judgment must be granted "if the pleadings, depositions, answers to

19

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). The court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Summary judgment is warranted when the evidence "is so one-sided that one party must prevail as a matter of law." Ibid. (quoting Anderson, 477 U.S. at 252).

Specifically, plaintiff argues that the court's determination that it breached the contract with JCSD by failing to provide a full complement of clinicians licensed to practice in New Jersey was in error. Plaintiff asserts it presented evidence that twenty-five of twenty-seven clinicians are licensed in New Jersey but that the remaining two clinicians also possessed the necessary requisite credentials to perform the required contracted services, albeit not from New

Jersey. Plaintiff asserts this was sufficient to satisfy the contract clause from Paragraph 8, that plaintiff "represents that it possesses all licenses, certifications, registrations, and/or any other approvals required by law as a provider of the above services and shall maintain them throughout the term of this Contract and any extensions thereto." We reject these arguments.

In sum, the judge decided:

> I am granting [JCSD]'s motion to dismiss plaintiff's complaint because plaintiff did not comply with the contract . . . . It did not have the proper licensed individuals. It did not have the proper fingerprinted individuals for criminal background checks before they were to begin on October 1 of 2021. I'm finding that they were therefore properly terminated as of December 17 of 2021. I think they could have terminated them for cause as of that date because the letter from the attorney to them clarified the problems 30 days before that, but in any event, the 30-day notice without cause was properly served on November 19 of 2021 by [] Pruchnik, the attorney. Thirty days later under that provision of the contract without cause the contract was terminated December 17th. Because the [plaintiff] did not comply with the contract as required, there's no requirement that the plaintiff be paid for October or for November's services.

The court further determined the breach was admitted by Clemente in plaintiff's motion opposition brief and by plaintiff's counsel during the oral argument, that "there's no dispute" that two of plaintiff's clinicians were not properly licensed in New Jersey "before the counseling services began."

21

Contract interpretation is a question of law reviewed de novo. Kieffer v. Best Buy, 205 N.J. 213, 223 (2011). "[W]here several writings are made as part of one transaction, relating to the same subject matter, they may be read together as one instrument, and the recitals in one may be explained, amplified or limited by reference to the other—the one draws contractual sustenance from the other." Schlossman's, Inc. v. Radcliffe, 3 N.J. 430, 435 (1950). "A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Barco Urban Renewal Corp. v. Hous. Auth. of Atl. City, 674 F.2d 1001, 1009 (3d Cir. 1982)). "[W]here [an] agreement is evidenced by more than one writing, all of them are to be read together and construed as one contract[.]" Lawrence v. Tandy & Allen, Inc., 14 N.J. 1, 7 (1953) (quoting Gould v. Magnolia Metal Co., 69 N.E. 896, 898 (Ill. 1904)). The document must be read "as a whole in a fair and common-sense manner." Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009).

Here, the RFP expressly required bidders to provide documentation that "[a]ll professional staff assigned to provide counselling services, shall be in possession of all appropriate and current certificates of eligibility as well as New Jersey Licenses, as awarded by a New Jersey State agency (DOE, DHS, etc.),

22

charged with such responsibility, or professional licensing entities, as appropriate." (Emphasis added). The RFP also stated that bidders were expected to examine the RFP "with care and observe all their requirements." Further, the contract required that plaintiff "shall comply with the requirements of N.J.S.A. 18A:6-7.1 regarding criminal history record checks for any and all officers and employees with direct contact with children prior to commencement of the Services." (Emphasis added). Moreover, as the judge found, the RFP was expressly incorporated into the contract, which stated that "[t]he parties agree that the terms, conditions and requirements contained in the [RFP] are incorporated by reference, are made a part of this agreement [(the contract)] and are binding on all parties as if all such terms, conditions and requirements were fully set forth in this agreement."

Applying these principles and a de novo standard to the language in the RFP and the contract, the court was correct by reading the documents together and finding that all of plaintiff's clinicians were required to possess a New Jersey license and have a background check with fingerprints prior to commencement of the contracted services. These breaches, lack of licenses and fingerprints, terminated the contract and the termination notice was properly served upon plaintiff.

A-2199-23

Finally, plaintiff claims that the judge erred because JCSD never provided any opportunity to cure the deficiencies even though the contract allowed the contractor to correct any deficiencies if, during the course of the contract, the work performed does not meet the contract requirements.[2] For support, plaintiff relies on Paragraph 3 of Part A, which states: "If during the course of the contract, the work performed does not meet the requirements set forth in the contract, the CONTRACTOR will correct or modify the work to comply with the contract requirements and the DISTRICT."

However, the contract states in its subsection "Termination for Convenience" to Paragraph 24, Termination, that JCSD "may terminate this Agreement at any time upon giving thirty (30) days' prior written notice." Under that subsection, contrary to plaintiff's claim, there is no requirement to provide plaintiff with any opportunity to cure. Indeed, Clemente testified at her

---

[2] Plaintiff also argues in its reply brief for the first time that JCSD did not provide proper notice before termination, that the judge erred by not finding for plaintiff on unjust enrichment and that public policy demands JCSD provide plaintiff with an opportunity to cure. Plaintiff, however, did not raise these issues below. It is improper for a party's reply brief to raise an issue for the first time. N.J. Republican State Comm. v. Murphy, 243 N.J. 574, 615 n.37 (2020); L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014). Thus, plaintiff has waived those arguments. Drinker Biddle & Reath LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011).

deposition that she "was aware of the termination clauses in the contract" and acknowledged that JCSD could terminate the contract with or without a reason.

"Where the terms of a contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017). "[U]nambiguous contracts are to be enforced as written." Grow Co. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008). In sum, as there was no genuine issue of material fact to prevent summary judgment for JCSD and the judge properly interpreted the contract.

To the extent we have not addressed any of plaintiffs' remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2199-23